IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| JERI LYNN RICH, § | |
| As Representative for § | |
| GAVRILA COVACI DUPUIS-MAYS, § | |
| An Incapacitated Person § | |
| *Plaintiff*, § | |
| § | |
| v. § | |
| § | CIVIL ACTION NO. _____ |
| MICHAEL PALKO, § | |
| KEITH DUANE HUDGENS, and § | |
| THE CITY OF McKINNEY, TEXAS. § | |
| *Defendants*. § | |

## PLAINTIFF'S COMPLAINT

**TO THE HONORABLE JUDGE OF SAID COURT:**

COMES NOW, Jeri Lynn Rich ("Rich"), as Representative of Gavrila Covaci Dupuis-Mays, an incapacitated person ("Dupuis-Mays"), complaining of Michael Palko ("Palko"), Keith Duane Hudgens ("Hudgens) and the City of McKinney, Texas, Defendants and for cause of action will respectfully show unto the Court as follows:

I.

### A.   Parties

1. Gavrila Covaci Dupuis-Mays is a resident of Collin County, Texas.

2. Defendant, the City of McKinney, Texas, is a governmental entity, which may be served with summons by serving the Mayor, Brian Loughmiller, at the following address: 222 N. Tennessee Street, McKinney, Texas, 75069. Service of said Defendant as described above can be effected by personal delivery.

Plaintiff's Complaint                                                                                                                       Page 1

3.     Defendant, Michael Palko, is an individual residing in Collin County, Texas, and can be served at his place of employment, McKinney Police Department, 2200 Taylor-Burke Drive, McKinney, Texas, 75071.

4.     Defendant, Keith Duane Hudgens, is an individual residing in Collin County, Texas, and can be served at his place of employment, McKinney Police Department, 2200 Taylor-Burke Drive, McKinney, Texas, 75071.

### B.     Jurisdiction and Venue

5.     The Court has original jurisdiction over this action pursuant to 28 U.S.C. §1331 and §1343 since Plaintiff is suing for relief under 42 U.S.C. § 1983. Any state law claims are brought pursuant to 28 U.S.C. §1367 and are subject to this court's supplemental jurisdiction. Venue is proper in the Eastern District of Texas pursuant to 28 U.S.C. §1391 because Defendants are domiciled and/or reside in the Eastern District of Texas, and all or a substantial part of the cause of action accrued in the Eastern District.

## II.

### Facts

6.     This case arises out of the unlawful detention and assault of Plaintiff by two McKinney Police Officers, Michael Palko and Keith Duane Hudgens.

7.     Dupuis-Mays suffered a brain injury as an infant and has been diagnosed with cerebral palsy and mental retardation and he has been declared an incapacitated person by the State of Texas. Jeri Lynn Rich is his adoptive mother and has been since 1995. Ms. Rich has been Petitioner's legal guardian since December 2, 2011.

8.      Dupuis-Mays resides at a group home in McKinney, Texas which is staffed and operated by D&S Residential Service.

9.      On July 11, 2015, Dupuis-Mays caseworker, Rhonda Holley, called the McKinney Police Department and requested that police officers be sent to the group home where Dupuis-Mays resides to transport Dupuis-Mays to Green Oaks Hospital, because Dupuis-Mays was in need of inpatient care.

10.     Two McKinney Police Officer(s), Michael Palko and Keith Duane Hudgens, arrived at the group home where Dupuis-Mays resides and transported Dupuis-Mays to Green Oaks Hospital in Dallas, Texas and involuntarily committed Dupuis-Mays to receive treatment.

11.     Dupuis-Mays was forced to wait an extended amount of time to be processed into Green Oaks Hospital for treatment and for the duration of this wait Dupuis-Mays was handcuffed and accompanied by Officers Palko and Hudgens.

12.     After a long period of time passed, while handcuffed and sitting, Dupuis-Mays became irritated.

13.     As a result of his irritation Dupuis-Mays, who was seated and located approximately six feet from Officer Palko, spit in the direction of the Officer Palko.

14.     Officer Palko responded by aggressively approaching and grabbing Dupuis-Mays by the back of the neck and slammed his head into the corner of a filing cabinet.

15.     After slamming Dupuis-Mays into the filing cabinet, the Officer Palko placed his knee on Dupuis-Mays back and kept his hand on the back of Dupuis-Mays neck and pinned his head to the ground.

16. As a result of Officer Palko's excessive force and behavior, Dupuis-Mays suffered a five inch laceration to his head which required seven staples.

17. Dupuis-Mays' also suffered abrasions to his knees and elbows and bruises to his back.

18. Dupuis-Mays was transported to Medical City Hospital to receive emergency medical care for the injuries he suffered as a result of Officer Palko's actions.

19. At no time was Dupuis-Mays an immediate threat to the police officers or anyone else. Dupuis-Mays was handcuffed with his arms behind his back the entire time. Officer Palko used excessive force and intentionally injured Dupuis-Mays.

20. On July 13, 2015 Sergeant Randy Agan ("Agan"), was contacted by Officer Terry Qualls, who informed Sergeant Agan that he had been contacted by Green Oaks Hospital management concerning the actions of some McKinney Police Officers that occurred at the Green Oaks Hospital on July 11, 2015.

21. Sergeant Agan contacted and spoke with Green Oaks Program Director, Russel Reed ("Reed") and Executive Director of Risk Management and Ethics, Alexis Johnson ("Johnson").

22. Reed and Johnson informed Sergeant Agan that the Police Officers had brought a patient (Dupuis-Mays) to Green Oaks for evaluation and during the course of the intake of the patient and while no Green Oaks staff was present the patient received a gash to the head.

23. Reed and Johnson also told Sergeant Agan that their staff had informed them that the officers told them the patient had "bumped" his head while the staff was not present in the room.

24. Johnson also informed Sergeant Agan that she had reviewed video of what occurred and the officers description of what happened did not comport with what the video showed and she requested Officer Agan view the video.

25. Officer Agan traveled to Green Oaks Hospital and viewed the video footage. After being informed of the incident by Green Oaks management and viewing the video of the incident Officer Agan conducted an Administrative Investigation. Officer Agan noted in his Administrative Investigation report that, "Officer Palko and Trainee Hudgens were in the triage room and the patient (Dupuis-Mays) is sitting in a chair with his hands cuffed behind his back in the corner. The patient spits on the floor and then at Officer Palko. Officer Palko then responds by slapping the patient on the right side of the face and then grabbing his head and forcing him to the ground. During the event, the patient hit a hard object cutting his head that required 16 staples."

26. Officer Agan also noted in his investigative report that after Dupuis-Mays suffered his injury the nursing staff from Green Oaks returned to the triage room and treated Dupuis-Mays for his injuries. While Officer Hudgens took pictures of Dupuis-Mays injuries, Officer Palko made a phone call to some unknown person, and released Dupuis-Mays to the Green Oaks staff and left.

27. When Officer Agan returned to the McKinney Police Department he met with McKinney Police Chief, Greg Conley and reported his findings to Chief Conley, who authorized Officer Agan to conduct an Internal Affairs ("IA") Investigation into the actions of Officers Palko and Hudgens.

28. When Officer Agan began his IA investigation he reviewed Officer Hudgens' incident report and after reading the report he questioned why Dupuis-Mays was taken into custody. Agan noted, Hudgens' report makes no finding that Dupuis-Mays was a danger to himself or others or how he posed a threat if not taken into custody.

29. Officer Agan also noted that Hudgens' report states that Dupuis-Mays became very aggressive and was threatening the officers, and noted that assertion was belied by the video and at no point did Dupuis-Mays' behavior reach a level that Officer Palko should have physically intervened.

30. Agan noted, Officer Hudgens stated in his report that after Dupuis-Mays spit at Officer Palko, Palko grabbed his head and shoulders and attempted to turn him away from the officers to prevent him from spitting on them further.

31. Agan claimed in his IA report that the video shows that Officer Palko slaps Mays on the right side of the face with his left hand and with his right hand placing it behind Dupuis-Mays head and turning and taking him to the floor.

32. Agan's IA report also notes that Dupuis-Mays was not aggressive and resistant following his injury as Officer Hudgens' stated in his incident report and the video in fact showed Dupuis-Mays sitting on the floor following his injury.

33. Officer Hudgens was issued Garrity and Administrative warnings by Agan on July 22, 2015 and had until July 24, 2015 to respond to the warnings. Officer Palko was issued Garrity and Administrative warnings by Agan on July 29, 2015 and had until August 3, 2015 to respond to the warnings. The administrative and garrity warnings issued to the officers were as follows:

  A. The apprehension of Dupuis-Mays was not in accordance with McKinney Police Department General Orders.

  B. The amount of force used in the triage room where Dupuis-Mays received a laceration to the head was excessive and unreasonable.

  C. The report written and submitted by Officer Hudgens did not reflect an accurate description of the events.

  34. After receiving Officer Hudgens' response to the Garrity and Admistrative Warnings Officer Agan again determined Hudgens was untruthful is his response. Hudgens stated in his response to the Garrity warning that he and Officer Palko had been informed by Dupuis-Mays caseworkers that Dupuis-Mays had physically struck them when they were attempting to calm him down. Agan interviewed the caseworkers who denied being struck by Dupuis-Mays and also denied telling Officers Hudgens or Palko that they had been struck by Dupuis-Mays.

  35. Additionally Officer Hudgens stated in his response to the Garrity warning that Dupuis-Mays became agitated when the officers were transporting him to Green Oaks and had threatened to kill the officers. This was belied by the in-car video viewed by Officer Agan which did not show Dupuis-Mays becoming agitated or threatening the officers and instead showed Dupuis-Mays acting childlike and cooperative.

  36. On August 13, 2015 Officer Agan interviewed Officer Palko attempting to reconcile the disparities between Officer Hudgens incident report and his response to the garrity warnings. Palko told Agan, he had no explanation for the discrepancies, but did confirm that Dupuis-Mays was not threatening or aggressive when the officers were transporting him to

Green Oaks. Palko also confirmed that the caseworkers did not tell the officers that Dupuis-Mays had assaulted them on the night of the incident.

37. Officer Palko told Agan during his interview that he could not think of any other way to deal with Dupuis-Mays spitting at him and that he was not aware that he had a mask or spit mask to use. Agan informed Palko that these items are provided by the McKinney Police Department and kept in the police vehicles.

38. On August 17, 2015 Officer Agan interviewed Officer Hudgens about the inconsistencies and truthfulness of his incident report and response to the garrity warnings. Hudgens told Agan that to the best of his knowledge he reported the incidents the way they happened in his response to the garrity warnings. Agan informed Hudgens of the inconsistencies in his response to the garrity warnings and told Hudgens to view the in-car video and video of the incident and revise his response. Hudgens completed a new response to the garrity warning "clarifying" his statements.

39. Officer Agan concluded in his investigative report that Officer Palko used poor tactics when dealing with Dupuis-Mays and that he should have used other methods when dealing with him such as the spit mask, surgical mask or pulling his shirt over his head. Agan also concluded that Palko should have taken into consideration the size of the room, his surroundings and the fact that Dupuis-Mays was in restraints before using physical force. Despite this Agan concluded that Palko did not use excessive force as defined by McKinney Police Departments General Orders, but did conclude that Palko failed to take proper care of a person in custody per the department's General Orders and his tactics were improper which caused Dupuis-Mays behavior.

40.    Agan also determined that Palko should have reviewed and corrected the incident report completed by Hudgens. Surprisingly, Officer Palko and Officer Hudgens were exonerated of the charges raised in the garrity and admistrative warnings issued to them, despite the overwhelming evidence of the inconsistencies in their reports and evidence of the failures to properly follow McKinney Police Department policies and procedures which lead to Dupuis-Mays unnecessary injury. It is the Plaintiff's belief and understanding that Officer Palko and Hudgens were not disciplined or reprimanded for their unlawful and unnecessary actions.

41.    The City of McKinney, Texas in its adoption of the officers' violations of the Plaintiff's rights ratified the false statements of the Officers. As such, the City of McKinney, Texas employs a policy, practice, or custom that permits police officers to use excessive force and file false police reports.

42.    The City of McKinney, Texas and its agents ratified the conduct of Palko and Hudgens by condoning false statements about the events. By intentionally adopting the officers' false statements, the City of McKinney, Texas has ratified all their misrepresentations before, during, and after the violations of Dupuis-Mays' civil rights.

43.    Defendant, the City of McKinney, Texas, directly or indirectly, under color of law, approved or ratified the unlawful, deliberate, malicious, reckless, and wanton conduct of Defendants Palko and Hudgens.

44.    Acting under color of law, by and through the policy makers of the City and pursuant to official policy or custom and practice, the City of McKinney, Texas intentionally, knowingly, recklessly, or with deliberate indifference to the rights of the inhabitants of Texas

and to the Plaintiff, failed to instruct, supervise, control, and/or discipline, on a continuing basis, Defendants Palko and Hudgens in the performance of their duties to refrain from:

A. Conspiring to violate the rights, privileges, and immunities guaranteed to Plaintiffs by the Constitution and Laws of the United States and the Laws of the State of Texas; and

B. Otherwise depriving citizens and individuals of their constitutional and statutory rights, privileges, and immunities.

45. The City of McKinney, Texas was apprised of the abuses by Palko and Hudgens by third party witnesses who were totally unrelated to the incident and Dupuis-Mays yet, the City's Internal Affairs department never even interviewed some of the third party witnesses and dismissed the statements of those it did interview. The City condones abuses by officers as they do not discipline transgressions.

## III.

## Causes of Action

### DUPUIS-MAYS' CLAIM FOR VIOLATION OF 42 U.S.C. § 1983 ET SEQ, FOURTH, EIGHTH, AND FOURTEENTH AMENDMENTS TO THE US CONSTITUTION

46. These actions violated 42 U.S.C. § 1983, the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution.

## IV.

### Damages to Plaintiff, Gavrila Covaci Dupuis-Mays

47. As a direct and proximate result of the occurrence made bases of this lawsuit, Plaintiff, Gavrila Covaci Dupuis-Mays suffered a five inch laceration to his head which required

seven staples. Dupuis-Mays' also suffered abrasions to his knees and elbows and bruises to his back. Dupuis-Mays was transported to Medical City Hospital to receive emergency medical care for the injuries he suffered as a result of Officer Palko's actions, and incurred the following damages.

    A.    Reasonable medical care and expenses in the past, for necessary care and treatment of the injuries resulting from the violations complained of herein and such charges are reasonable and were usual and customary charges for such services;

    B.    Reasonable medical care and expenses which will in all reasonable probability be incurred in the future;

    C.    Physical pain and suffering in the past;

    D.    Physical pain and suffering in the future;

    E.    Mental anguish in the past;

    F.    Exemplary Damages; and

    G.    Necessary and reasonable attorney fee.

## V.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that judgment be rendered against Defendants, for amount in excess of jurisdictional minimum of this court. Plaintiff further prays for all other relief, both legal and equitable, to which he may show himself justly entitled.

Respectfully submitted,

**LAW OFFICES OF JOHN E. WALL, JR.**
5728 Prospect Avenue, Suite 2001
Dallas, Texas 75206-7284
Phone: 214-887-0100
Fax: 214-887-0173

*/s/ John E. Wall, Jr.*
John E. Wall, Jr.
State Bar No. 20756750
Email: jwall@jwall-law.com
Kolter C. McKenzie
State Bar No. 24067762
Email: kmckenzie@jwall-law.com

and

Clay A. Hartmann
Texas State Bar No. 00790832
Clay.hartmann@thehartmannfirm.com
THE HARTMANN FIRM, PC
6677 Gaston Avenue
Dallas, Texas 75214
214-828-1822
214-828-6999 (fax)

**ATTORNEYS FOR PLAINTIFF**

**JURY REQUEST**

Plaintiff respectfully requests a jury trial.