# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| JERI LYNN RICH, AS REPRESENTATIVE § <br> FOR GAVRILA COVACI DUPUIS-MAYS, § <br> AN INCAPACITATED PERSON; § <br> § <br> § <br> v. § <br> § <br> MICHAEL PALKO, ET AL., § § | Civil Action No. 4:16-CV-00870 <br> (Judge Mazzant/Judge Johnson) |

## MEMORANDUM ADOPTING REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Came on for consideration the report of the United States Magistrate Judge in this action, this matter having been heretofore referred to the Magistrate Judge pursuant to 28 U.S.C. § 636. On April 11, 2017, the report of the Magistrate Judge (Dkt. #34) was entered containing proposed findings of fact and recommendations that Defendants Michael Palko ("Detective Palko"), Keith Duane Hudgens ("Officer Hudgens") (collectively, the "Individual Defendants"), and the City of McKinney, Texas' ("McKinney's") Motion to Dismiss (Dkt. #11) be granted in part and deferred in part.

The Magistrate Judge recommended Plaintiff's Eighth Amendment claim be dismissed against Defendants; however, the Magistrate Judge found that Plaintiff defeated the Individual Defendants' qualified immunity defense as to the Fourth Amendment claims at this stage of litigation, and that the Court needs narrowly tailored discovery pursuant to *Backe v. LeBlanc*, 692 F.3d 645 (5th Cir. 2012). Thus, the Court should defer and carry the issue of qualified immunity until it may be decided, including on summary judgment as appropriate. Further, the Magistrate Judge found Defendants' request for a Rule 7(a) Reply as to Plaintiff's claim against McKinney should be granted. Plaintiff filed a Rule 7(a) Reply on May 15, 2017 (Dkt. #41). Having received

the report of the Magistrate Judge (Dkt. #34), having considered each of Defendants' timely filed objections (Dkt. #38), having considered Plaintiff's Response (Dkt. #40), having considered Plaintiff's Rule 7(a) Reply (Dkt. #41), and having conducted a de novo review, the Court is of the opinion that the findings and conclusions of the Magistrate Judge are correct, and the Court hereby adopts the Magistrate Judge's report (Dkt. #34) as the findings and conclusions of the Court.

## BACKGROUND

Gavrila Covaci Dupuis-Mays ("Dupuis-Mays") suffered a brain injury as an infant, was diagnosed with cerebral palsy and mental retardation, and declared an incapacitated person by the State of Texas (Dkt. #1 at 2). Jeri Lynn Rich, his adoptive mother, has been Dupuis-Mays' legal guardian since December 2, 2011. *Id.* Dupuis-Mays resides at a group home in McKinney, Texas, which is staffed and operated by D&S Residential Service ("D&S").

On July 11, 2015, Dupuis-Mays' caseworker contacted the McKinney Police Department and requested that police officers be sent to the group home to transport him to Green Oaks Hospital because Dupuis-Mays needed inpatient care. *Id.* at 3. The Individual Defendants arrived at the group home. *Id.* Plaintiff alleged the Individual Defendants involuntarily committed and detained Dupuis-Mays and transported him to Green Oaks Hospital in Dallas, Texas (the "Hospital"). *Id.* At the Hospital, Dupuis-Mays was forced to wait an extended amount of time to be processed and was handcuffed for the entire duration of the time. *Id.*

After waiting for over two (2) hours at the Hospital and still handcuffed, Dupuis-Mays became irritated and spat in the direction of Detective Palko. *Id.* Plaintiff alleged Detective Palko responded by aggressively approaching Dupuis-Mays, and Detective Palko used excessive force on him. *Id.* Plaintiff alleged that Dupuis-Mays suffered a five (5) inch laceration to his head,

which required seven (7) staples, suffered abrasions to his knees and elbows, and suffered bruises to his back. *Id.* at 4.

According to Plaintiff, on July 13, 2015, Sergeant Randy Agan ("Sergeant Agan") was contacted concerning the actions of the Individual Defendants at the Hospital. *Id.* at 4-5. The Hospital allegedly informed Sergeant Agan that the Individual Defendants reported false information to the Hospital staff. *Id.* at 5. Thus, Sergeant Agan conducted an Internal Affairs Investigation ("IAI") on both of the Individual Defendants. *See id.* When conducting the IAI, Sergeant Agan noted that Officer Hudgens' report had discrepancies after reviewing video footage, audio recordings, and interviews conducted at the group home. *Id.* at 6.

According to Plaintiff, Sergeant Agan found Detective Palko dealt with the situation poorly. *Id.* Detective Palko could have used a different method, such as a spit mask, surgical mask, or pulling his shirt over his head in response to Dupuis-Mays' conduct. *Id.* Sergeant Agan concluded that Detective Palko did not use excessive force as defined by McKinney Police Department's General Orders, but did conclude that he failed to take proper care of Dupuis-Mays and his behavior. *Id.*

In addition to her claims against the Individual Defendants, Plaintiff asserted McKinney employs a policy, practice, or custom that permits police officers to use excessive force and file false police reports. *Id.*

## ANALYSIS

A party who files timely written objections to a magistrate judge's report and recommendation is entitled to a de novo determination of those findings or recommendations to which the party specifically objects. 28 U.S.C. § 636(b)(1)(c); FED. R. CIV. P. 72(b)(2)-(3). Defendants object that the Magistrate Judge erred for the following reasons: (1) the report failed

3

to consider the video and audio exhibits before the Court; (2) the report improperly relied on Sergeant Agan's post-incident, hindsight-aided, hearsay opinions; (3) the report improperly found that the Individual Defendants were not entitled to qualified immunity on Plaintiff's claim for unlawful detention; (4) the report improperly found that the Individual Defendants were not entitled to qualified immunity on Plaintiff's claim for excessive force; (5) it was improper for the Magistrate Judge to allow Plaintiff the opportunity to amend her claims against McKinney; (6) the Magistrate Judge failed to rule on Defendants' motion to dismiss; (7) the Magistrate Judge failed to rule on Plaintiff's Fourteenth Amendment claims; and (8) the report improperly relied on Plaintiff's allegations of Officer Hudgens' reporting discrepancies.

**Objection 1: The Report Failed to Consider the Video and Audio Exhibits Before the Court**

Defendants generally object to the Magistrate Judge's apparent failure to consider the video and audio exhibits presented to the Court when analyzing Defendants' motion to dismiss. Defendants moved for dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure (Dkt. #11 at 10). In considering a Rule 12(b)(6) motion to dismiss, a court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). A court will "not look beyond the face of the pleadings to determine whether relief should be granted based on the alleged facts." *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).

Although the qualified immunity defense should be resolved at the earliest possible stage in litigation, the video and audio evidence cannot be properly considered at the motion to dismiss stage. *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)). The Court's review is limited to the complaint, any documents attached to the complaint, and any documents

attached to the motion to dismiss that are central to the claim and referenced by the complaint. *Id.* The video and audio footage do not fall into any of these categories and would be more appropriately considered on a motion for summary judgment. Moreover, the Magistrate Judge suggested that even with the audio and video footage, the Court needed further discovery in order to determine whether the Individual Defendants should be afforded qualified immunity. Thus, Defendants' first objection is overruled.

**Objection 2: The Report Improperly Relied on Sergeant Agan's Post-Incident, Hindsight-Aided, Hearsay Opinion**

Defendants argue Sergeant Agan's statements are not relevant to any underlying constitutional violation (Dkt. #38 at 5). The standard on a motion to dismiss is whether the plaintiff has alleged specific facts that both allow the Court to draw the reasonable inference that the Individual Defendants are liable for the harm Plaintiff has alleged and that defeat the Individual Defendants' qualified immunity defense with equal specificity. *Zapata v. Melson*, 750 F.3d 481, 485 (5th Cir. 2014). Whether an officer's actions are objectively reasonable in a Fourth Amendment unlawful detention claim must be assessed in light of the surrounding circumstances. *Newman v. Guedry*, 703 F.3d 757, 762 (5th Cir. 2012). Thus, Sergeant Agan's report is relevant because his report allegedly reviewed interviews of the caseworkers at the group home. Further, Plaintiff asserted that Sergeant Agan informed his officers that alternative methods, other than those taken by the Individual Defendants, should be used when someone in custody spits at an officer, which is relevant to the excessive force claim (Dkt. #1 at 8).

Because these alleged factual assertions in Sergeant Agan's report could be relevant in the qualified immunity analysis when discerning whether the Individual Defendants' conduct was reasonable, the Magistrate Judge properly relied upon them. Further, Sergeant Agan's conclusion that the Individual Defendants' conduct did not rise to the level of "excessive force" or that the

5

Individual Defendants did not wrongfully detain Dupuis-Mays does not necessarily determine that the Individual Defendants' should be afforded qualified immunity. It is the Court's role to make this determination; hence while Sergeant Agan's report is relevant, it is not dispositive.

Defendants also complain that Sergeant Agan's report is hearsay. The Court notes Defendants assert this argument for the first time in their objections. Although the Court does not have a copy of Sergeant Agan's report, the Court finds the report will likely fall under one of the exceptions to the rule against hearsay. FED. R. EVID. 803. Thus, Defendants' objection is overruled.

**Objection 3: The Report Improperly Found the Individual Defendants Were Not Entitled to Qualified Immunity on Plaintiff's Claim for Unlawful Detention**

Defendants object to the Magistrate Judge's finding that Plaintiff adequately pleaded "no probable cause" (Dkt. #38 at 6). Defendants complain that the Magistrate Judge improperly based its finding on "Sergeant Agan's hearsay, post-incident commentary on the topic." *Id.* As Plaintiff stated in her response, Sergeant Agan's report found that the caseworkers at the group home denied telling the Individual Defendants they had been struck by Dupuis-Mays (Dkt. #23 at 16). In order to detain Dupuis-Mays, the Individual Defendants needed to have reason to believe there was a substantial risk of serious harm to Dupuis-Mays or others unless Dupuis-Mays was immediately restrained. TEX. HEALTH & SAFETY CODE § 573.001(a). Sergeant Agan's report is more than comments on the actions of the Individual Defendants with the aid of hindsight. Sergeant Agan allegedly found that the Individual Defendants did not have a reason to believe there was a substantial risk of harm.

Defendants generally complain that the audio and video recordings establish the Individual Defendants had probable cause to detain Dupuis-Mays. Even though Defendants' reliance on the audio and video recordings is inappropriate at the motion to dismiss stage, the Magistrate Judge

6

found the evidence presented is not enough to show that the Individual Defendants should be entitled to qualified immunity. Thus, taking Plaintiff's factual allegations as true, Plaintiff has asserted enough to defeat the Individual Defendants' qualified immunity defense, and Defendants' objection is overruled.

Defendants generally object to the Magistrate Judge's finding that there is clearly established law that the Individual Defendants' conduct would violate Dupuis-Mays' constitutional rights (Dkt. #38 at 7). The Magistrate Judge referred to cases in the report indicating the Individual Defendants were on notice that their actions would violate Dupuis-Mays' constitutional rights (Dkt. #34 at 9). Defendants fail to point out any specific objections to the cases listed in the report or the Magistrate Judge's findings. Thus, Defendants' objection is overruled.

Defendants vaguely argue that the Magistrate Judge improperly applied the case law to the facts of this case (Dkt. 38 at 7-8). Defendants seemingly agree with the report's findings that in cases where probable cause was found under TEX. HEALTH & SAFETY CODE § 573.001, the person detained was displaying suicidal tendencies, which has not been shown in Dupuis-Mays' case. Further, Defendants also seem to agree that an officer cannot create a "good faith" belief that a person intends to harm himself or others. *Seibert v. Cannady*, 2005 WL 646048, at *8 (N.D. Tex. Mar. 18, 2005). However, Defendants complain that the Magistrate Judge improperly relied on Sergeant Agan's report regarding probable cause. *Id.* at 8. As stated previously, the Court finds Sergeant Agan's report will likely fall under a hearsay exception, and the Court takes Plaintiff's allegations as true at the motion to dismiss stage.

Additionally, Defendants argue that Plaintiff's Complaint stated, "Agan noted, Hudgen's report makes no finding that [Plaintiff] was a danger to himself or other or how he posed a threat

if not taken into custody" (Dkt. #38 at 8). Essentially, Defendants argue it is improper to assume probable cause did not exist simply because Officer Hudgens failed to include in his report an affirmative finding of probable cause. However, Plaintiff's Complaint stated that Sergeant Agan questioned Officer Hudgens for taking Dupuis-Mays into custody (Dkt. #1 at 6). The Court can infer from this statement that because Officer Hudgens failed to make a finding that Dupuis-Mays was a danger to himself or others, Sergeant Agan was allegedly concerned that Officer Hudgens decided to detain Dupuis-Mays.

What Defendants fail to understand is that the Magistrate Judge noted that factual issues remain (Dkt. #34 at 9-10). Defendants essentially argue that the Court should take their version of the facts as true, when the standard is the opposite. Without further evidence, the Court agrees with the Magistrate Judge's report that it is premature to decide whether the Individual Defendants should be afforded qualified immunity. Thus, Plaintiff has defeated the qualified immunity defense at this stage of litigation by adequately pleading facts sufficient to state a claim, and it is more appropriate to decide the qualified immunity defense after limited discovery.

**Objection 4: The Report Improperly Found the Individual Defendants Were Not Entitled to Qualified Immunity on Plaintiff's Claim for Excessive Force**

Defendants first object to the report's finding that Plaintiff adequately pleaded the Individual Defendants' actions were "objectively unreasonable" (Dkt. #38 at 8). Defendants argue Plaintiff is required to show that the Individual Defendants' actions were so egregious that no reasonable officer could have believed the conduct was constitutional (Dkt. #38 at 8-9) (citing *Thompson v. Mercer*, 762 F.3d 443, 440 (5th Cir. 2014)). The Court finds Plaintiff sufficiently pleaded facts to meet this standard. First, Dupuis-Mays was neither suspected nor charged with any crime (Dkt. #34 at 12). Second, Dupuis-Mays spat at the Individual Defendants from across the room, an action that does not pose any real significant crime or immediate threat to the safety

of others, especially considering that Dupuis-Mays was handcuffed. *Id.* Finally, Dupuis-Mays was not resisting arrest or attempting to evade arrest. *Id.* The Court fails to see how any officer would find the Individual Defendants' conduct objectively reasonable based on these alleged facts, and Defendants fail to explain how it is otherwise reasonable.

Although Defendants have repetitively objected to the Court's reliance on Sergeant Agan's report, Defendants now object to the Magistrate Judge's dismissal of Sergeant Agan's finding that Detective Palko did not use excessive force as defined by the McKinney Police Department's General Orders (Dkt. #34 at 9). Whether an officer used excessive force under Section 1983 is for the Court to decide—not the sergeant reviewing the officer's actions. Thus, this objection is overruled.

Defendants' second objection is that the four (4) cases the Magistrate Judge cited to as clearly established law are factually distinguishable (Dkt. #38 at 9). In *White v. Pauly*, the Supreme Court reiterated that the clearly established law must be "particularized" to the facts of the case. 137 S. Ct. 548, 552 (2017). In *White*, the district court failed to identify any case of an officer acting under similar circumstances. *Id.* Instead, the court relied on *Graham v. Connor*, 490 U.S. 386 (1989), at a very general level. *Id.* This is not the case here. The Magistrate Judge pointed out four (4) cases in which the facts are "particularized" to the facts of the current case.

Despite Defendants' assertions, clearly established law does not require identical facts to the current case. *Hanks v. Rogers*, 853 F.3d 738, 746-47 (5th Cir. 2017). A right may be clearly established without a case directly on point. *Id.* (citing *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015)). Defendants seemingly contend that none of the cases cited by the Magistrate Judge apply to the case at hand because those cases did not involve a person that was mentally incapacitated. This is not the standard. Further, Defendants argue none of the cases involve officers that were

9

informed of a plaintiff that was allegedly in a psychotic phase, was verbally and physically abusive, or a plaintiff covered in feces who refused to bathe. Again, the standard is not to find identical facts. Moreover, the Individual Defendants were informed of Dupuis-Mays' conditions when they arrived at the group home, and the alleged excessive force did not occur until allegedly two (2) hours after they left the group home. Thus, Dupuis-Mays' alleged physical and emotional state hours before the Individual Defendants used alleged excessive force is irrelevant. The Individual Defendants allegedly used excessive force in reaction to Dupuis-Mays' spitting—not because of his previous emotional and physical state at the group home. There is clearly established law that an officer violates the Fourth Amendment if he resorts to overwhelming physical force rather than continuing verbal negotiations with an individual who poses no immediate threat or flight risk. *Hanks*, 853 F.3d at 747 (citing *Deville v. Marcantel*, 567 F.3d 156, 167-69 (5th Cir. 2009)).[1] Thus, the Court agrees that there is clearly established law that the Individual Defendants were on notice that their conduct would violate Dupuis-Mays' constitutional rights.

Defendants object to the Magistrate Judge's reliance on *Brady v. Louisiana* because it is an Eighth Amendment excessive force case. Although Plaintiff is alleging a Fourth and Fourteenth Amendment excessive force violation, the Court finds reliance on this case is proper because the facts are similar to the case at hand and the Eighth Amendment excessive force violation requires "unnecessary and wanton infliction of pain," a standard higher than that required under the Fourth and Fourteenth Amendment. Regardless, as stated in the report, there are three (3) other cases that outline clearly established law that are particularized to the facts of the case. Further, the Court

---

[1] *Hanks* and *Deville* discuss a plaintiff stopped for a "minor traffic violation." Both cases held that an individual stopped for a minor traffic offense, offers, at most, passive resistance, and presents no threat or flight risk would not require abrupt application of physical force. The Fifth Circuit held in both cases that alternative methods, besides physical force, were available to the officers. The fact that Dupuis-Mays was not involved in a traffic stop is irrelevant because Dupuis-Mays was not charged or suspected of any crime, meaning there was less reason for the Individual Defendants to use the alleged excessive force.

10

has additionally cited to *Hanks*, a recent Fifth Circuit opinion, which cited to clearly established case law showing the Individual Defendants were on notice that their actions would violate Dupuis-Mays' constitutional rights. Thus, Defendants' objection is overruled.

**<u>Objection 5: It Was Improper for the Magistrate Judge to Allow Plaintiff the Opportunity to File a Rule 7(a) Reply</u>**

Defendants object to the Magistrate Judge's finding that Plaintiff should be given an opportunity to amend her claims against McKinney (Dkt. #38 at 11). The Court has discretion on whether or not to request a Rule 7(a) Reply from Plaintiff. *Truvia v. Julien*, 187 F. App'x 346, 350 (5th Cir. 2006). The Magistrate Judge seemingly used discretion in allowing Plaintiff to file a Rule 7(a) Reply because Defendants specifically requested that Plaintiff's file a Rule 7(a) Reply as alternative relief (Dkt. #11 at 25-29). The Court fails to understand why Defendants object to the Magistrate Judge's finding, as the relief was expressly requested by Defendants. Thus, this objection is overruled.

On May 15, 2017, Plaintiff filed a Rule 7(a) Reply in order to adequately plead her municipal liability claim. To establish the liability of a municipality, Plaintiff bears the burden of pleading and proving the existence of: (1) a policymaker; (2) an official policy; and (3) a violation of constitutional rights whose moving force is the policy or practice/custom. *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 695 (1978); *Bishop v. Arcuri*, 674 F.3d 456, 467 (5th Cir. 2012). To establish the third element, Plaintiff may show "either (1) that the policy itself violated federal law, or authorized or directed the deprivation of federal rights; or (2) that the policy was adopted or maintained by the municipality's policymakers with 'deliberate indifference' as to its known or obvious consequences" by way of at "least a pattern of similar violations." *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 308-09 (5th Cir. 2004). There is no heightened pleading requirement placed upon Plaintiff in order to assert a Section 1983 claim

against a municipality. *Leatherman v. Tarrant Cnty. Narcotics Intelligence Coordination Unit*, 507 U.S. 163, 168 (1993); *Breed v. City of Kirbyville*, 2015 WL 11112538, at *3 (E.D. Tex. July 24, 2015); *Flanagan v. City of Dall., Tex.*, 2015 WL 4731377, at *2 (N.D. Tex. Aug. 10, 2015).

In the Rule 7(a) Reply, Plaintiff asserted Chief Greg Conley is a policymaker for McKinney because under the City of McKinney Code of Ordinances, the Police Chief has immediate discretion and control of the Police Department (Dkt. #41 at 2-3). Plaintiff alleged McKinney knew Chief Conley had an unwritten policy to insulate the officers from meritorious claims of excessive force and false reporting. *Id.* at 3. Further, Plaintiff alleged Sergeant Agan found misconduct among the Individual Defendants, but ultimately exonerated the Individual Defendants of the charged raised against them because Sergeant Agan was following McKinney's unwritten policy (Dkt. #1 at 9). Plaintiff alleged the overwhelming evidence of the inconsistencies in the Individual Defendants' reports and evidence of the failures to properly follow McKinney Police Department policies and procedures, which resulted in violations of Dupuis-Mays' constitutional rights, shows an unwritten policy to insulate officers of constitutional violations. *Id.* Thus, the Court finds Plaintiff has adequately pleaded the first two (2) elements for municipal liability of McKinney.

Additionally, there must be a direct causal link between some policy or decision and the violation. *Johnson*, 379 F.3d at 310. Plaintiff alleged that the adoption of this unwritten policy caused the violations of Dupuis-Mays' constitutional rights. *Id.* If McKinney had such an unwritten policy of insulating officers who commit excessive force and false reporting, such a policy would be unconstitutional. *Piotrowski v. City of Hous.*, 237 F.3d 567, 579 (5th Cir. 2001) (citing *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 407 (1997)) ("even a facially innocuous policy will support liability if it was promulgated with deliberate indifference

to the 'known or obvious consequences' that constitutional violations would result."). Thus, Plaintiffs have adequately defeated Defendants' motion to dismiss.

Plaintiff further asserted that McKinney ratified the Individual Defendants' conduct. Plaintiff alleged that McKinney "knew the policy of the Chief was to insulate the officers from meritorious claims of excessive force and false reporting thereby making it an unwritten policy of [McKinney] to downplay abuses by the Police Department. As such, [McKinney] is liable for the conduct of [the Individual Defendants] by reason of ratification" (Dkt. #41 at 3). Fifth Circuit precedent has limited the theory of ratification to "extreme factual situations." *See Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1998) (refusing to find ratification in case in which officer shot fleeing suspect in the back); *Grandstaff v. City of Borger*, 767 F.2d 161 (5th Cir. 1985) (finding ratification in case in which officers "poured" gunfire onto a truck and killed innocent occupant).

Plaintiff alleged Sergeant Agan found misconduct among the Individual Defendants, but ultimately exonerated the Individual Defendants of the charged raised against them; thus, McKinney is liable for the conduct of the Individual Defendants by reason of ratification (Dkt. #1 at 9). Plaintiff also argued McKinney failed to interview some of the third party witnesses and dismissed the statements of those McKinney did interview, as indicative of ratification. *See Hobart v. City of Stafford*, 916 F. Supp. 2d 783, 797 (S.D. Tex. 2013) (citing *Santibanes v. City of Tomball, Tex.*, 654 F. Supp. 2d 593, 613-14 (S.D. Tex. 2009) (noting that policymaker's decision not to view certain evidence that raises questions about plausibility of a subordinate's explanation supports a finding of ratification)). Taking Plaintiff's allegations in the Complaint as true, Sergeant Agan's conduct, who ultimately followed the direction of Chief Conley, could be

considered as ratifying the Individual Defendants' possible constitutional violations. Thus, Plaintiff has defeated Defendants' motion as to the ratification claim.

**Objection 6: The Magistrate Judge Failed to Rule on Defendants' Motion to Dismiss**

Defendants argue that the Court must rule on the Individual Defendants' qualified immunity defense on the motion to dismiss simply because they believe "[t]here is no better evidence than what is already before the [C]ourt…," such as the audio and video recordings of the incident and the hours leading up to the incident (Dkt. #38 at 13). The procedure outlined by the Fifth Circuit requires the Court to analyze Plaintiff's Complaint and determine whether Plaintiff's pleadings assert facts which, if true, would overcome the defense of qualified immunity. *Backe*, 691 F.3d at 648 (citing *Lion Boulos v. Wilson*, 834 F.2d 504, 507-08 (5th Cir. 1987)). If the Court remains unable to rule on the immunity defense without further clarification of the facts, it may issue a discovery order narrowly tailored to uncover only those facts needed to rule on the immunity claim. *Id.* The Magistrate Judge followed this procedure. *Webb v. Livingston*, 618 F. App'x 201, 206-07 (5th Cir. 2015) (A "district court's proper adherence to Circuit procedure in deferring its ruling on [the defendants'] motion to dismiss and ordering discovery narrowly tailored to the issue of qualified immunity deprives [the Fifth Circuit] of jurisdiction over [an] appeal."). As previously stated, the Court may not review audio and video recordings at the motion to dismiss stage; regardless, the Magistrate Judge found that even considering the evidence submitted prematurely, it is not enough for the Court to make a ruling on the immunity claim. Thus, this objection is overruled.

**Objection 7: The Magistrate Judge Failed to Rule on Plaintiff's Fourteenth Amendment Claims**

Defendants object that the report fails to address Plaintiff's allegations brought under the Fourteenth Amendment (Dkt. #38 at 13). The Fourth Amendment protects against unreasonable

14

seizures, whereas the Fourteenth Amendment guarantees due process of law for persons subject to detention. *Batiste v. City of Beaumont*, 426 F. Supp. 2d 395, 400 (E.D. Tex. 2006) (citations omitted). Both provisions of the constitution protect citizens against excessive force by officers acting under color of state law. *See id.* (citing *Graham*, 490 U.S. at 397 (Fourth Amendment); *Valencia v. Wiggins*, 981 F.2d 1440, 1446 (5th Cir. 1993) (Fourteenth Amendment)). An arrested person is seized within the meaning of the Fourth Amendment. *Kaupp v. Texas*, 538 U.S. 626, 631 (2003). An institutionalized person is a detainee entitled to Fourteenth Amendment protections. *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 200 (1989).

There is no bright line rule as to when a seizure ends and detention begins. *Batiste*, 426 F. Supp. 2d at 401 (citing *Graham*, 490 U.S. at 395 n.10). Taking Plaintiff's allegations in the Complaint as true, whether analyzing Plaintiff's claims under the Fourth Amendment or Fourteenth Amendment, the Individual Defendants' alleged actions violated clearly established rights of which an objectively reasonable police officers would have been aware.

In *Batiste v. City of Beaumont*, two (2) police officers took the plaintiff into custody pursuant to a "mental health commitment warrant." 421 F. Supp. 2d 1000, 1003 (E.D. Tex. 2006). The plaintiff remained in the officers' custody for approximately three and a half hours, while the officers sought to secure her admission to a hospital. *Id.* The plaintiff alleged she did not resist arrest; however, she was struck, kicked, dragged, and tasered while she was in handcuffs. *Id.* The court held that no reasonable officer would consider this conduct to be either "reasonable force in light of the facts and circumstances" or "a good faith effort to maintain or restore discipline." *Id.* at 1006.

Although the Individual Defendants did not taser Dupuis-Mays, Plaintiff alleged the Individual Defendants grabbed Dupuis-Mays and slammed his head into a filing cabinet simply

15

because Dupuis-Mays spat in the direction of the Individual Defendants, while Dupuis-Mays was handcuffed. Under *Batiste*, no reasonable officer would consider this conduct as "reasonable force in light of the facts and circumstances" or "a good faith effort to maintain or restore discipline." Thus, there is clearly established law that the Individual Defendants' alleged conduct would violate Dupuis-Mays' Fourteenth, as well as Fourth, Amendment rights.

Plaintiffs' allegations could fall within a violation of the Fourth or Fourteenth Amendment. *Batiste*, 426 F. Supp. 2d at 401. It is not necessary to resolve the issue of which Amendment the Individual Defendants allegedly violated at this stage of litigation. *Id.* ("motion can be determined without deciding at this point whether plaintiff's claim is governed by one or the other of the Amendments, or both"). Thus, Defendants' objection is overruled.

**Objection 8: The Report Improperly Relied on Plaintiff's Allegations of Officer Hudgens' Report Discrepancies**

Defendants object that Officer Hudgens' alleged reporting discrepancies cannot directly support a constitutional violation (Dkt. #38 at 13). Defendants misunderstand the report's findings when Defendants argue that "[a]ny alleged failure to report the actions of the Individual Defendants' detention of the Plaintiff does not make the opposite true." *Id.* Plaintiff specifically alleged that Officer Hudgens falsely reported the events of the evening to the Hospital employees and to Sergeant Agan, such that Sergeant Agan required Officer Hudgens to "correct" his report. This is more than a failure to report an action; Plaintiff has specifically alleged that the Individual Defendants told the Hospital staff that Dupuis-Mays "bumped" his head, which Plaintiff alleged was false (Dkt. #1 at 4-5), and Sergeant Agan specifically found that Officer Hudgens "was untruthful in his response." *Id.* at 7. As the Magistrate Judge found, an officer's inaccurate reporting to his police department could lead to causing a constitutional violation. *Seibert*, 2005 WL 646048 at *8 (citing *Roberts v. City of Shreveport*, 397 F.3d 287, 291-92 (5th Cir. 2005) ("to

be liable under § 1983, a defendant must have caused or been personally involved in the constitutional violation alleged.")). Thus, this objection is overruled.

## CONCLUSION

Having received the report of the United States Magistrate Judge, having considered each of Plaintiff's timely filed objections (Dkt. #38), and having conducted a de novo review, this Court is of the opinion that the findings and conclusions of the Magistrate Judge are correct and adopts the Magistrate Judge's report (Dkt. #34) as the findings and conclusions of the Court.

It is, therefore, **ORDERED** that Defendants' Motion to Dismiss (Dkt. #11) is **GRANTED IN PART**, **DENIED IN PART**, and **DEFERRED IN PART**. Plaintiff's Eighth Amendment claim is **DISMISSED** against the Individual Defendants. As to the Fourth and Fourteenth Amendment claims against the Individual Defendants, the Court needs narrowly tailored discovery pursuant to *Backe*. Thus, the Court will **DEFER** and **CARRY** the issue of qualified immunity until it may be decided, including on summary judgment as appropriate. The parties are directed to follow the instructions laid out in the report of the Magistrate Judge regarding permissible discovery. Additionally, after reviewing Plaintiff's Rule 7(a) Reply, the Court finds Defendants' motion to dismiss as to Plaintiff's claims against McKinney is **DENIED**.

It is further **ORDERED** that the parties shall have forty-five (45) days from the date of this order to conduct the limited discovery as laid out in the report of the Magistrate Judge, and have fourteen (14) days from the date of this Order to file requests for discovery not previously listed by the Magistrate Judge as permissible discovery.

**IT IS SO ORDERED**.

**SIGNED** this 6th day of June, 2017.

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE