IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| JERRI LYNN RICH, | § | |
| As Representative for, | § | |
| GAVRILA COVACI DUPUIS-MAYS, | § | CIVIL ACTION NO. 4:16 cv-00870 |
| An Incapacitated Person, | § | JUDGE AMOS L. MAZZANT, III |
| *Plaintiff,* | § | MAGISTRATE JOHNSON |
| v. | § | JURY DEMANDED |
| | § | |
| DETECTIVE MICHAEL PALKO, | § | |
| OFFICER KEITH DUANE HUDGENS, | § | |
| THE CITY OF MCKINNEY, TEXAS, | § | |
| *Defendants*. | § | |

### INDIVIDUAL MCKINNEY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON QUALIFIED IMMUNITY AND BRIEF IN SUPPORT

TO THE HONORABLE JUDGE MAZZANT AND MAGISTRATE JOHNSON:

COME NOW, the Individual McKinney Defendants, Detective Michael Palko and Officer Keith Duane Hudgens ("hereinafter collectively referred to as "Individual Defendants," "McKinney Officers," or "Defendant Officers") and submit their *Motion for Summary Judgment on Qualified Immunity and Brief in Support* ("*McKinney Motion and Brief*") pursuant to rule 56 of the Federal Rules of Civil Procedure. In support of the *Individual McKinney Defendants' Motion and Brief*, the Individual McKinney Defendants would respectfully show this Honorable Court the following:

## TABLE OF CONTENTS

Page(s)

I. STATEMENT OF THE ISSUES ...................................................................................5

II. STATEMENT OF UNCONTESTED FACTS ..............................................................5

   A. Plaintiff's Allegations and Admissions .............................................................5
   B. Additional Uncontested Facts ............................................................................6

III. LEGAL STANDARD FOR SUMMARY JUDGMENT ...............................................8

   A. Traditional Standard...........................................................................................8
   B. No-Evidence Standard .......................................................................................9

IV. FAILURE OF § 1983 CIVIL RIGHTS CLAIMS .........................................................9

   A. Plaintiff's Claims Against the Individual Defendant Officers are Barred by
      Qualified Immunity.............................................................................................9

      1. Failure of Wrongful Detention Claim....................................................11
      2. Failure of Excessive Force Claim ..........................................................14
      3. Failure of False Report Claim................................................................16

V. CONCLUSION............................................................................................................17

## TABLE OF AUTHORITIES

**Cases**

*Anderson v. Creighton*, 482 U.S. 635, 640 (1987) .......................................................................... 10
*Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986) ...................................................................... 8
*Bibbs v. City of Lubbock*, 200 U.S. App. LEXIS 39065 (5th Cir. 2000) ...................................... 10
*Cantrell v. City of Murphy*, 666 F.3d 911, 923 (5th Cir. 2012) ..................................................... 13
*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) .................................................................... 9
*Collins v. Ainsworth*, 382 F.3d 529, 537 (5th Cir. 2004) ............................................................... 10
*Comacho v. City of El Paso*, 2017 U.S. Dist. LEXIS 80983 at *61 (W.D. Tex. June 22, 2016) . 16
*Cook v. Lombardi*, 2016 U.S. Dist. LEXIS 67185 at *20 (E.D. Mo. May 23, 2016) .................... 15
*Dunaway v. New York,* 442 U.S. 200, 214 (1979) ........................................................................... 13
*Fraire v. City of Arlington*, 957 F.2d 1268, 1275-76 (5th Cir. 1992) ............................................ 15
*Goodson v. City of Corpus Christi*, 202 F.3d 730, 736 (5th Cir. 2000) .................................. 10, 11
*Gordon v. Neugebauer,* 2014 U.S. Dist. LEXIS 154593 (N.D. Tex. 2014) ................................... 13
*Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) ........................................................................... 10
*Hernandez v. Igloo Corp. Retirement Plan,* 868 F. Supp. 200, 204 (S.D. Tex. 1994) ................... 9
*Hover v. Brenner*, 200 U.S. App. LEXIS 38779 at *6 (5th Cir. 2000) .......................................... 15
*Hudson v. McMillian*, 503 U.S. 1, 6 (1992) ................................................................................... 14
*Jackson v. Hobbs*, 2015 U.S. Dist. LEXIS 139862 (E.D. Ark. Sept. 17, 2015) ............................ 15
*Jarrett v. Township of Besalem*, 12 Fed. Appx. 505, 507 (3d Cir 2009) ....................................... 16
*Kellough v. Bertrand*, 22 F.Supp.2d, 602, 611 (S.D. Tex. 1998) .................................................. 10
*Kingsley v. Hendrickson*, 135 S.Ct. 2466 (2015) ........................................................................... 14
*Kitchen v. Dall. Cnty.*, 759 F.3d 468, 477 (5th Cir. 2014) ............................................................. 14
*Landrigan v. Warwick*, 628 F.2d 736 (1st Cir. 1980) ................................................................... 16
*Lewis v. Wetzel*, 2017 U.S. Dist. LEXIS 119749 at *30 (M.D. Penn. July 31, 2017) .................. 14
*Los Angeles v. Heller*, 475 U.S, 796 (1986) .................................................................................. 10
*Maag v. Wessler*, 960 F.2d 773, 776 (9th Cir. 1991) ..................................................................... 13
*Malley v. Briggs*, 475 U.S. 335, 341 (1986). ................................................................................. 10
*Martinez v. Smith,* 200 F.3d. 816 (5th Cir. 1999) .......................................................................... 13
*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) .............................. 8
*McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) ............................................ 11
*Ramirez v. Knowlton*, 524 F.3d 124, 128 (5th Cir. 2008) .............................................................. 14
*Royal v. Spragins*, 575 F. App'x. 300, 302-303 (5th Cir. 2014) .................................................... 14
*Saucier v. Katz*, 533 U.S. 194, 197 (2001) .................................................................................... 10
*Saucier v. Katz*, 533 U.S. 194, 201 (2001) .................................................................................... 10
*Smith v. Patri*, 99 Fed. Appx. 497, 498 (5th Cir. 2004) ................................................................. 16
*Snyder v. Trepagnier*, 142 F.3d 791, 800 (5th Cir. 1998) ............................................................. 10
*State v. Hawley*, 284 Conn. 914, 931 (Conn. App. Ct. 2007) ....................................................... 15
*Sullivan* v. *the County of Hunt, Tex.,* 106 Fed.Appx. 215 (5th Cir. 2004) ................................... 13
*Tarver v City of Edna*, 410 F.3d 745, 750 (5th Cir. 2005) ............................................................ 17
*Thompson v. Beasley*, No. 4:14-cv-68, 309 F.R.D. 236, 246 (N.D. Miss. 2015) ......................... 14
*Whitley v. Albers*, 475 U.S. 312, 320–21 (1986) ........................................................................... 14
*Young v. City of Killeen*, 775 F.2d 1349, 1352 (5th Cir. 1985), *reh'g denied*, 778 F.2d 790 (5th Cir. 1985) ....................................................................................................................................... 15

**Statutes**

T<span style="font-variant:small-caps">ex</span>. H<span style="font-variant:small-caps">ealth</span> & S<span style="font-variant:small-caps">afety</span> C<span style="font-variant:small-caps">ode</span> § 573.001 (c) .................................................................................... 11, 12
T<span style="font-variant:small-caps">ex</span>. H<span style="font-variant:small-caps">ealth</span> & S<span style="font-variant:small-caps">afety</span> C<span style="font-variant:small-caps">ode</span> § 573.001 (d) ............................................................................................ 12
T<span style="font-variant:small-caps">ex</span>. H<span style="font-variant:small-caps">ealth</span> & S<span style="font-variant:small-caps">afety</span> C<span style="font-variant:small-caps">ode</span> § 573.001 (a) ............................................................................................ 11

**Rules**

Rule 56 ................................................................................................................................... 1
Rule 56 (c) ............................................................................................................................. 8

## I. STATEMENT OF THE ISSUES

1. Whether Gavrila Covaci Dupuis-Mays, an Incapacitated Person ("Plaintiff" or "Dupuis-Mays") was a danger to self and others on July 11, 2015.

2. Whether Dupuis-Mays was wrongfully detained and seized by the Individual Defendants on July 11, 2015.

3. Whether Detective Palko's use of force was unreasonable and excessive when Dupuis-Mays spit on Palko's chest.

4. Whether inadequacies/inaccuracies in Hudgens' Police Report support liability under 42 U.S.C. Section 1983.

## II. STATEMENT OF UNCONTESTED MATERIAL FACTS

### A. PLAINTIFFS' ALLEGATIONS AND ADMISSIONS

1. Plaintiff admits, in the *Complaint*, that Dupuis-Mays resided at a Group Home in McKinney, Texas, which was staffed and operated by D&S Community Services (*Complaint,* Doc. 1 p. 3 ¶ 8). Plaintiff further admits that on July 11, 2015, Dupuis-Mays' Case Manager, Rhonda Holley ("Manager Holley"), called the McKinney Police Department for emergency law enforcement assistance to transport Dupuis-Mays to Green Oaks Hospital ("Green Oaks") in Dallas, because he needed in-patient treatment by Green Oaks. (Doc. 1 p. 3 ¶ 9-10).

2. Plaintiff admits in the Complaint that Dupuis-Mays became irritated while waiting to be processed into Green Oaks for treatment (Doc. 1 p. 3 ¶ 12).[1] Plaintiff further admits that while seated at Green Oaks, Dupuis-Mays spit at/on McKinney Detective Palko (Doc. 1 p. 3 ¶ 13).

---

[1] The McKinney Officers' Incident Report and Application for Emergency Detention show that when they arrived at the Group Home, Plaintiff Mays was exhibiting verbally and physically aggressive behavior toward himself and the D&S Staff and the D&S Staff were afraid for their safety to transport him to Green Oaks facility.

3.  Plaintiff admits that the McKinney Police Department was notified of the July 11, 2015 incident at/from Green Oaks and the resulting perceived injury to Dupuis-Mays. (Doc. 1 p. 5 ¶ 26).

4.  Plaintiff admits that the McKinney Police Department, (through their Investigating Officer Sergeant Randy Agan) investigated the July 11, 2015 events, both Administratively and Internally. (Doc. 1 pp. 4-5 ¶¶ 20-22, 25-27). Plaintiff alleges that McKinney Officer Hudgens' Incident Report contained inconsistencies/discrepancies between his recollection/statements and those of the Green Oaks Staff, but then Plaintiff admits that McKinney's investigations/Sergeant Agan revealed, addressed, explained, and resolved issues/inconsistencies/discrepancies in McKinney Officer Hudgens' report and his response to Garrity warnings. (Doc. 1 pp. 6-7 ¶¶ 28-30, 36, 38). Specifically, Plaintiff admits, "Hudgens completed a new response to the Garrity warning "clarifying" his statements." (Doc. 1 p. 7 ¶ 38).

5.  Plaintiff admits the Investigating Officer Sergeant Agan concluded that the McKinney Officers/Detective Palko did not use excessive/illegal force as defined by the McKinney Police Department's General Orders, but Palko could have used better tactics in handling Dupuis-Mays' behavior and Palko should have reviewed and corrected Hudgens' incident report. (Doc. 1 pp. 8-9 ¶¶ 39-40).

6.  Finally, Plaintiff admits that the McKinney Officers, Detective Palko and Officer Hudgens "were exonerated of the charges raised in the Garrity and administrative warnings" after the investigations. (Doc. 1 p. 9 ¶ 40).

B.     ADDITIONAL UNCONTESTED MATERIAL FACTS

7.     The 9-1-1 call described Dupuis-Mays as "in a psychotic phase, where he is verbally and physically aggressive towards staff" "covered in feces and refuses to bathe." "I called Green Oaks, and they told me to call y'all." (See Appendix Disk 1, 9-1-1 Call)

8.     There was no delay or detour en route from the D&S Community Services Group Home to Green Oaks Hospital. (See Appendix, Disk 2, files Keith Hudgens_201507110212 and 20150711 1003)

9.     Audio and Video from the Green Oaks Hospital Waiting Room shows Dupuis-Mays in an agitated and threatening state. Dupuis Mays spits, utters profanities, and states: "I want to go to jail." "I will kill you." "I hate police officers." "You are going to hell." The Individual Defendants request hospital assistance which does not timely appear and the Officers forcefully hold Dupuis-Mays in his chair until a nurse escorts them into the Triage Room. (See Appendix Disk 1, PES AR2-1, 202[2], and Body microphone Audio-Hudgens, Keith)

10.    Audio and Video from the Green Oaks Hospital Triage Room shows Dupuis-Mays' continued anger with expressions of profanity and similar threats: "I hope you die." "Just take me to jail." (See Appendix Disk 1, PES AR2-1, 202, and Body microphone Audio-Hudgens, Keith)

11.    Audio and Video from the Green Oaks Hospital Triage Room shows Dupuis-Mays first spitting on the floor and then spitting across the room on the chest of Palko, and only then Palko quickly taking Dupuis-Mays to the floor to stop him from spitting on anyone. There was no spit mask available to Palko when Dupuis-Mays spit on Palko. (See Appendix Disk 1, PES AR2-1, 202, and Body microphone Audio-Hudgens, Keith)

---

[2] On August 11, 2017, this Court entered an order (Doc. 59) denying Defendants' motion for qualified immunity discovery. Thus, no business record affidavit prove-up is provided for the Green Oaks Hospital Video.

12. Prior to and following Dupuis-Mays' spitting on Palko, Palko uses calming dialogue to calm and to de-escalate Dupuis-Mays. (See Appendix Disk 1, PES AR2-1, 202, and Body microphone Audio-Hudgens, Keith)

13. Once Dupuis-Mays was placed on the floor in the Triage Room, Palko used no additional force upon Dupuis-Mays. (See Appendix Disk 1, PES AR2-1, 202, and Body microphone Audio-Hudgens, Keith)

14. Dupuis-Mays was not prosecuted for any offenses committed on July 11, 2015. (See Declaration of Randy Agan)

### III. LEGAL STANDARD FOR SUMMARY JUDGMENT

#### A. THE STANDARD FOR A TRADITIONAL RULE 56 SUMMARY JUDGMENT

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Rule 56 (c). Substantive law will identify which facts are material. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). In order for the facts to be material, they must relate to a dispute that could affect the outcome of the suit under the governing body of substantive law. *Id.*

To avoid a properly supported summary judgment, the non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Disputed facts which are irrelevant and unnecessary should not be considered by the court. *Liberty Lobby* at 248. If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its

case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

### B. THE STANDARD FOR A NO EVIDENCE RULE 56 SUMMARY JUDGMENT

Under a "No Evidence" Rule 56 Motion for Summary Judgment there is no burden on the moving party "to produce evidence showing the absence of a genuine issue of material fact, even with respect to an issue on which the nonmoving part bears the burden of proof. *Celotex* at 325. Rather, the movant can meet its burden by pointing out to the court that "there is an absence of evidence to support the nonmoving party's case." *Id.* Summary judgment is mandated if the non-movant fails to make a showing sufficient to establish the existence of an element essential to the nonmovant's case on which it bears the burden of proof at trial. *Hernandez v. Igloo Corp. Retirement Plan,* 868 F. Supp. 200, 204 (S.D. Tex. 1994).

### IV. FAILURE OF § 1983 CIVIL RIGHTS CLAIM

#### A. PLAINTIFF'S CLAIMS AGAINST THE INDIVIDUAL DEFENDANT OFFICERS ARE BARRED BY QUALIFIED IMMUNITY.

Plaintiff's claims against the Individual Defendants fall into three categories: (1) unlawful detention claims relating to Dupuis-Mays; (2) excessive force claims relating to the Individual Defendants handling of Dupuis-Mays; and (3) violation of Dupuis-Mays' constitutional rights claims relating to their reporting of the incident.

As governmental employees, each of the Individual Defendants[3] is entitled to Qualified Immunity, an immunity from suit available to governmental officials sued in their individual capacities under Section 1983. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified

---

[3] Although not directly entitled to Qualified Immunity, the City of McKinney may derivatively assert its employees' qualified immunities. *See generally Kellough v. Bertrand*, 22 F.Supp.2d, 602, 611 (S.D. Tex. 1998) Thus, if this Honorable Court grants summary judgment, the City respectfully requests dismissal of all claims against it. *See Los Angeles v. Heller*, 475 U.S, 796 (1986)

Immunity protects an official whose conduct was objectively reasonable even if the conduct infringed upon a constitutional right of the plaintiff. *Goodson v. City of Corpus Christi*, 202 F.3d 730, 736 (5th Cir. 2000). Qualified Immunity focuses on what the officer reasonably understood his powers and responsibilities to be at the time he acted. *Snyder v. Trepagnier*, 142 F.3d 791, 800 (5th Cir. 1998) (noting that the actual circumstances may not justify the officer's behavior, but he is entitled to immunity if the facts as they appeared to the officer would make the conduct reasonable). *See* also *Bibbs v. City of Lubbock*, 200 U.S. App. LEXIS 39065 (5th Cir. 2000). The purpose of the Qualified Immunity inquiry is to recognize that officers can make reasonable mistakes as to how a legal doctrine will apply. *Saucier v. Katz*, 533 U.S. 194, 197 (2001). In fact, Qualified Immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

The Qualified Immunity analysis involves a two-part test. The Court must determine whether the plaintiff has alleged a violation of a "clearly established" constitutional right. *Collins v. Ainsworth*, 382 F.3d 529, 537 (5th Cir. 2004) and *Saucier v. Katz*, 533 U.S. 194, 201 (2001). A right is "clearly established" for purposes of qualified immunity if "[t]he contours of the right [are] sufficiently clear [such] that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 482 U.S. 635, 640 (1987). In other words, the relevant inquiry "is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *Saucier*, at 202.

In addition to finding a violation of a clearly established right, the defendant is nonetheless entitled to immunity if "[his] conduct was objectively reasonable" in light of "law which was clearly established at the time of the disputed action." *Collins*, 382 F.3d at 573; *see also Goodson v. City of Corpus Christi*, 202 F.3d 730, 736 (5th Cir. 2000). Importantly, <u>Plaintiff</u>

has the burden of demonstrating the inapplicability of the qualified immunity defense by establishing <u>both</u> prongs.  *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002).  Here, Plaintiff fails to establish a violation of any clearly established right.  Furthermore, even if Plaintiff could establish a violation, qualified immunity protects the Individual Defendants, as their conduct was objectively reasonable in light of the circumstances before them.

### 1.   FAILURE OF WRONGFUL DETENTION CLAIM

It is well settled in Texas that a Police Officer may, without a warrant, place a person in custody if a) the Officer has reason to believe and does believe that the person is mentally ill and because of that illness, there is a substantial risk of serious harm to the person or to others unless the person is immediately restrained; and b) the Officer believes there is not sufficient time to obtain a warrant before taking the person into custody.  TEX. HEALTH & SAFETY CODE § 573.001 (a).  A substantial risk of serious harm to the person or others may be shown by either a) the person's behavior, or b) evidence of severe emotional distress and deterioration in the person's mental condition to the extent that the person cannot remain at liberty.  *Id.* § 573.001 (b).  The Police Officer may form the belief that the person meets the criteria for apprehension either a) from a representation of a credible person, or b) on the basis of the conduct of the apprehended person or the circumstances under which the apprehended person is found.  *Id.* § 573.001 (c).  A Police Officer that takes a person into custody must immediately transport that person to the nearest appropriate inpatient mental health facility, or one deemed suitable by the local mental health authority.  *Id.* § 573.001 (d).

It is uncontested that in a 9-1-1 call from the Group Home, the caller reported Dupuis-Mays was "in a psychotic phase," "physically and verbally aggressive towards staff," "covered in feces and refusing to bathe."

As reported by Officer Erik Johnson, Manager Holley at the D&S Group Home and a Psychiatrist responded to Dupuis-Mays' increasingly aggressive behavior. The Psychiatrist advised that Dupuis-Mays was having a psychotic episode and needed to be taken back to Green Oaks Hospital in Dallas. Manager Holley also told Officer Johnson that she and the Psychiatrist had children which they brought with them to the Group Home that night because they had no other care provisions for their children. Holley further stated that both Holley and the Psychiatrist were concerned that if either one of them drove Dupuis-Mays to Green Oaks Hospital with their children in the car, Dupuis-Mays would create a safety issue and might harm them during the trip. *See* Appendix at 1-3.

It is beyond dispute and debate that Dupuis-Mays was a danger to himself and others on the night of July 11, 2015. And in light of the 9-1-1 call and information from Manager Holley confirming that Green Oaks Hospital urged he return to that facility, it was reasonable for Hudgens and Palko to rely upon the information received and conveyed by the 9-1-1 operator and the information provided by Manager Holley at the scene and therefore, to transport Dupuis-Mays back to Green Oaks Hospital.

Here, Dupuis-Mays' behavior, general demeanor, and statements by the D&S staff at the Group Home provided the McKinney Officers with a sufficient basis to conclude that he was in a behavioral state that substantially impaired his "emotional process" or judgment, and therefore, was mentally ill under Texas law. *See* TEX. HEALTH & SAFETY CODE § 573.001(c). Further, Dupuis-Mays' physical actions (defecating on himself and then refusing to bathe) provide a reasonable officer with a sufficient basis to believe he is a danger to himself. Therefore, a reasonable officer, such as the Individual Defendants, could have concluded that Dupuis-Mays required being taken into protective custody under Texas law.

INDIVIDUAL MCKINNEY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON QUALIFIED IMMUNITY AND BRIEF IN SUPPORT
PAGE 12

Based upon the McKinney Officers' personal observations of Dupuis-Mays' behavior and also D&S Manager Holley's statements to the McKinney Officers[4] (not to mention Dupuis-Mays' attempts to runaway from the group home multiple times that evening), a reasonable Officer would have probable cause to take Dupuis-Mays into protective custody under Texas law.[5] In *Cantrell v. City of Murphy*, the Fifth Circuit held, "probable cause exists where the facts and circumstances within the officer's knowledge at the time of the seizure are sufficient for a reasonable person to conclude that an individual is mentally ill and poses a substantial risk of serious harm." 666 F.3d 911, 923 (5th Cir. 2012).

Accordingly, the McKinney Officers had probable cause to detain Dupuis-Mays and take him into protective custody. There was no improper seizure and/or Fourth Amendment violation. The Defendant Officers, are therefore, entitled to Qualified Immunity. *See Cantrell* at 923-924 (citing *Sullivan v. County of Hunt, Tex.,* 106 Fed. Appx. 215 (5th Cir. 2004) and *Martinez v. Smith,* 200 F.3d. 816 (5th Cir. 1999)); *see also Gordon v. Neugebauer,* 2014 U.S. Dist. LEXIS 154593 (N.D. Tex. 2014).

  2. **F**AILURE OF **E**XCESSIVE **F**ORCE **C**LAIM

In order to state a claim for excessive force in violation of the Fourth Amendment to the Constitution, a Plaintiff must allege (1) an injury, which (2) resulted directly and only from the use of force that was clearly excessive to the need; and the excessiveness of which was (3)

---

[4] In the Police Incident Report and the application for Emergency Detention (both public records), D&S Manager Holley states the D&S Staff are afraid for their safety and that of Dupuis-Mays. Manager Holley requested the McKinney Officers to transport Dupuis-Mays to the Green Oaks facility for mental health treatment because of his volatile behavior. Namely, the reports show that Dupuis-Mays was being verbally and physically aggressive with D&S Staff with escalating behavior due to his refusal to follow group home rules and then defecating on himself and refusing to bathe.

[5] The probable cause standard applies in the context of a seizure of the mentally ill. *See, Cantrell v. City of Murphy*, 666 F.3d 911, 923 (5th Cir. 2012)(citing, *Maag v. Wessler*, 960 F.2d 773, 776 (9th Cir. 1991). The application of the probable cause standard in this context is further supported by the Supreme Court's decision in *Dunaway v. New York,* 442 U.S. 200, 214 (1979), which stands for the general proposition that a Fourth Amendment seizure is reasonable only if supported by probable cause.)

objectively unreasonable. *Ramirez v. Knowlton*, 524 F.3d 124, 128 (5th Cir. 2008). Reasonableness is an objective standard viewed from "the perspective of a reasonable officer on the scene". ." *See Royal v. Spragins*, 575 F. App'x. 300, 302-303 (5th Cir. 2014).

Under the Fourteenth Amendment Standard, "a constitutional violation occurs where a detention officer uses force maliciously and sadistically for the very purpose of causing harm to the pretrial detainee [or prisoner], rather than in a good faith effort to maintain or restore discipline." *Thompson v. Beasley*, No. 4:14-cv-68, 309 F.R.D. 236, 246 (N.D. Miss. 2015) (citing *Kitchen v. Dallas Cnty.*, 759 F.3d 468, 477 (5th Cir. 2014)); *Hudson v. McMillian*, 503 U.S. 1, 6 (1992) (citing *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986)).

In 2015 the Supreme Court set a new standard of proof for claims of excessive force under the Fourteenth Amendment. Plaintiff must prove: (1) express intent to punish, or (2) the Officer's actions were not rationally related to a legitimate government purpose, or the Officer's actions were excessive in relation to that purpose. *Kingsley v. Hendrickson*, 135 S.Ct. 2466 (2015).

Here, McKinney Detective Palko used physical force to restrain Dupuis-Mays and place him on the floor after Dupuis-Mays spit on Detective Palko. This exact scenario has been analyzed by other courts and found to be a reasonable application of force in summary judgment settings. *See Lewis v. Wetzel*, 2017 U.S. Dist. LEXIS 119749 at *30 (M.D. Penn. July 31, 2017) (granting summary judgment and finding placing a plaintiff on the floor proportionate to the need to thwart that particular plaintiff from potentially spiting on an Officer). *See* also *Cook v. Lombardi*, 2016 U.S. Dist. LEXIS 67185 at *20 (E.D. Mo. May 23, 2016) (granting summary judgment to officer who after being spit upon takes handcuffed plaintiff to the ground in response to the spitting attack); *Jackson v. Hobbs*, 2015 U.S. Dist. LEXIS 139862 (E.D. Ark.

Sept. 17, 2015) (Magistrate's recommendation later adopted by District Court in 2015 U.S. Dist. LEXIS 139858 (Oct. 14, 2015) that summary judgment be granted based upon qualified immunity on claim of prisoner who threatened to spit on guard and was taken to the floor).

Universally viewed from a health perspective, spitting is an abusive, disrespectful, and unsanitary act highly likely to spread contagious, sometimes deadly diseases and acknowledged as calculated to incite others to act in retaliation.  *State v. Hawley*, 284 Conn. 914, 931 (Conn. App. Ct. 2007).

Palko has been criticized for not following a McKinney Police Department procedure and deploying a spit mask when Dupuis-Mays began to spit.  However, it is undisputed, that such a mask was not immediately available in the Triage Room.  Detective Palko's failure to follow the procedural use of a spit mask does not establish that his use of force was clearly unreasonable. *See Fraire v. City of Arlington*, 957 F.2d 1268, 1275-76 (5th Cir. 1992) (quoting *Young v. City of Killeen*, 775 F.2d 1349, 1352 (5th Cir. 1985), *reh'g denied*, 778 F.2d 790 (5th Cir. 1985); *Hover v. Brenner*, 200 U.S. App. LEXIS 38779 at *6 (5th Cir. 2000) (liability could not be based upon officer's failure to follow procedure, thus creating the need to use force).  The Triage Room video indisputably shows as Dupuis-Mays is placed on the floor, his head inadvertently strikes the corner of a filing cabinet.  Dupuis-Mays sustained a scalp laceration, but did not lose consciousness. The resulting injury was accidental, not deliberate, intended, and/or excessive. Prior to the use of force, Palko attempted to de-escalate Dupuis-Mays' anger and aggressive by calm and reassuring dialogue, and after the use of force, Palko was composed and asked Dupuis-Mays why he spit on him.

Thus, Palko's use of force was neither malicious nor sadistic, and in light of Dupuis-Mays' assaultive conduct, reasonable in all respects.  (*See* Appendix Disk 1)

### 3. FAILURE OF FALSE REPORT CLAIM

There is no liability under 42 U.S.C. Section 1983 solely for the filing of an inaccurate or false report and nothing more. The Fifth Circuit has stated that "there is no right to a completely accurate police report. *Smith v. Patri*, 99 Fed. Appx. 497, 498 (5th Cir. 2004); *see also Comacho v. City of El Paso*, 2017 U.S. Dist. LEXIS 80983 at *61 (W.D. Tex. June 22, 2016). Courts from other jurisdictions have similarly held that false or inaccurate police report do not implicate a constitutional violation. *Jarrett v. Township of Besalem*, 12 Fed. Appx. 505, 507 (3d Cir. 2009). (holding "[T]he filing of a false police report is not itself a constitutional violation."); *Landrigan v. Warwick*, 628 F.2d 736, 744 (1st Cir. 1980). Here, Hudgens' errors in his report writing, although regrettable, did not result in any prosecution, and thus, are not actionable under 42 U.S.C. Section 1983.

## V. CONCLUSION

As noted herein, Plaintiff's claims, in their entirety, against the Individual Defendants fail as a matter of law. Plaintiff fails to establish any violation of a constitutional right.

Plaintiff also has the burden of establishing that the Individual Defendants acted so objectively unreasonably that *no* (not one) reasonable police officer faced with the same or similar circumstances *could* (not should) have acted as the Individual Defendants acted without knowing rights were violated. Plaintiff fails to carry this burden as to either Individual Defendant. Importantly "[I]f officers of reasonable competence could disagree as to whether the Plaintiff's rights were violated, the officer's Qualified Immunity remains in tact." *Tarver v City of Edna*, 410 F.3d 745, 750 (5th Cir. 2005).

INDIVIDUAL MCKINNEY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON QUALIFIED IMMUNITY AND BRIEF IN SUPPORT

PAGE 16

The Individual McKinney Defendants have shown that Dupuis-Mays was a danger to self and others on July 11, 2015. There is no disputed issue of material fact that Dupuis-Mays was lawfully detained and seized by Hudgens and Palko on July 11, 2015.

The Video and Audio record supports the reasonableness of Palko's use of force once Dupuis-Mays spit on Palko. Palko's use of force, although regrettable only in that injury occurred, was reasonable and necessary to stop Dupuis-Mays from spitting, and further assaulting, the Officers and anyone else in the Triage Room.

Inaccuracies in Hudgens' police report do not support liability of 42 U.S.C. Section 1983, and thus do not arise to a cognizable claim.

**WHEREFORE PREMISES CONSIDERED**, the McKinney Individual Defendants respectfully pray that their summary judgment motion be granted as to all of Plaintiff's claims against the Individual Defendants and that all claims be dismissed with prejudice or such partial relief as the Court deems just; and for such other and further relief in equity or in law to the Individual Defendants may show themselves justly entitled.

Respectfully submitted,

**MCKAMIE KRUEGER, L.L.P.**

*/s/ James C. Butt*
**WILLIAM W. KRUEGER, III**
State Bar No. 11740530
bill@mckamiekrueger.com
JAMES C. BUTT
jbutt@mckamiekrueger.com
State Bar No. 24040354
500 W. Lookout Dr.
Richardson, Texas 75080
214-253-2600 – Telephone
214-253-2626—Facsimile
**ATTORNEY FOR THE MCKINNEY DEFENDANTS**

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the *Individual McKinney Defendants' Motion for Summary Judgment on Qualified Immunity and Brief in Support* was served on Plaintiff's Counsel of Record, John Wall and Clay Hartmann, in compliance with the Federal Rules of Civil Procedure by ECF filing on the 17th of August, 2017.

 */s/ James C. Butt*
**JAMES C. BUTT**