## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| **JERI LYNN RICH,** | § | |
| **AS REPRESENTATIVE FOR** | § | |
| **GAVRILA COVACI DUPUIS-MAYS,** | § | |
| **AN INCAPACITATED PERSON** | § | |
| *Plaintiff*, | § | **CIVIL ACTION NO.  4:16-CV-00870** |
| | § | **JUDGE MAZZANT/JUDGE JOHNSON** |
| **v.** | § | |
| | § | |
| | § | |
| **THE CITY OF MCKINNEY,** | § | |
| *Defendant.* | § | |

### JOINT PRETRIAL ORDER

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Jeri Lynn Rich as representative for Gavrila Covaci Dupuis-Mays ("Dupuis-Mays" or "Plaintiff"), an incapacitated person, and The City of McKinney, Texas ("McKinney") the parties in the above entitled and numbered cause, in accordance with this Court's Scheduling Order and the local rules, make and submit this their Joint Pretrial Order, and for same would respectfully show the Court as follows:

**A.      COUNSEL FOR THE PARTIES**

Plaintiff:

> John E. Wall, Jr.
> State Bar No. 20756750
> Email: jwall@jwall-law.com
> **LAW OFFICES OF JOHN E. WALL, JR.**
> 5728 Prospect Avenue, Suite 2001
> Dallas, Texas 75206-7284
> Phone:  214-887-0100
> Fax:  214-887-0173
> **and**
> Clay A. Hartmann
> Texas State Bar No. 00790832
> Clay.hartmann@thehartmannfirm.com
> *THE HARTMANN FIRM, PC*
> 6677 Gaston Avenue

Dallas, Texas 75214
214-828-1822
214-828-6999 (fax)

**ATTORNEYS FOR PLAINTIFF,**
**Jeri Lynn Rich, as representative**
**for Gavrila Mays.**

      **ATTORNEYS FOR DEFENDANT, City of McKinney Texas:** William W. Krueger, III, Jason B. Jacob, and James Christopher Bearden 2100 Alamo Road, Suite T, Richardson, TX 75080, 214-253-2600

## B.     STATEMENT OF JURISDICTION

      Jurisdiction is not disputed.

## SUMMARY OF THE PARTIES' CLAIMS AND DEFENSES

## C.     PLAINTIFF'S CONTENTIONS

(a)     Plaintiff claims the rights of Gavrila Mays, were violated contravening 42 U.S.C. § 1983, the Fourth, Eighth and Fourteenth Amendments to the United States Constitution when Gavrila Covaci Dupuis-Mays  was arrested on July 11, 2015 by Officers Palko and Hudgens, who, following the policy of City of McKinney Texas violated Texas Health and Safety Code § 573.001 and the Constitution of the United States of America.  Gavrila Covaci Dupuis-Mays right to freedom from restraints, his right to assurance of safety as a mental health detainee, right to prompt appropriate medical care and right to be free from official false reporting of the events were all violated by Hudgens and Palko and City of McKinney Texas by reason of their policies, written and non-written, caused the violations and thereafter ratified the violations that were committed by Hudgens and Palko.

(b)     Plaintiff would show that the Defendant, City of McKinney, Texas utilizes four policies that impose *Monell* liability on the City of McKinney:
     1. the policy to transport mental health patients to a facility, other than the closest one;
     2.  the policy to hand-cuff all mentally ill persons who are detained and transported regardless of the circumstances;
     3. McKinney and Chief Conley's unwritten policy to insulate the officers from meritorious claims of failing to ensure the safety of Gavrila Covaci Dupuis-Mays    after he was detained, failing to provide prompt medical care, use of excessive force and false reporting; and,
     4.  that McKinney  ratified Palko and Hudgen's constitutional violations of Gavrila Mays.

(c)     Plaintiff claims the rights of Gavrila Covaci Dupuis-Mays were violated when Hudgens and Palko tricked Mays into wearing handcuffs, then lied to Mays about where the officers were taking Mays. Also, Palko and Hudgen's ignored Texas Health and Safety Code § 573.001 and then failed to insure the safety of Gavrila Covaci Dupuis-Mays when the officers took him down, while handcuffed, in the triage room at Green Oaks Hospital in Dallas, Texas. The officers falsely reported the events and the City of McKinney Texas ratified the officers' Constitutional violations.

(d)     Plaintiff maintains that as a result of the Defendant's conduct, Gavrila Covaci Dupuis-Mays should recover compensatory damage, exemplary damages, attorney's fees, costs and all other equitable remedies available by reason of the law.

## D.      DEFENDANT'S CONTENTIONS

The Fifth Circuit opinion is the "Law of the Case" in this matter. Under the "Law of the Case" doctrine, an Appellate Court decision controls subsequent lower Court decision absent an applicable exception. The doctrine provides that "a decision of a factual or legal issue by an appellate court establishes the 'law of the case' and must be followed in all subsequent proceedings in the same case in the trial court or on a later appeal in the appellate court." *Lyons v. Fisher*, 888 F.2d 1071, 1074 (5th Cir. 1989) (internal citations omitted).

Regarding the Plaintiff's claim of unlawful detention by the Officers, the Fifth Circuit found that the "circumstances in which the officers found him also allowed them reasonably to conclude that Dupuis-Mays was experiencing 'severe emotional distress and deterioration in [his] mental condition to the extent that [he could not] remain at liberty.'" *See Rich*, 920 F.3d, at 295. Therefore, the Officers "had a lawful basis to detain him under the Texas Health and Safety Code and complied with the Code's requirements by taking him directly to Green Oaks. The Fifth Circuit explicitly stated that the Defendant Officers complied with the Texas Health and Safety Code § 573.001 by taking him directly to Green Oaks. *Id*. at 296. The Fifth Circuit further held the officers

did not violate Dupuis-Mays's constitutional rights and are entitled to QI on the unlawful-detention claim." *Id.*

Regarding the Plaintiff's claim of use of excessive force by the Officers, the Fifth Circuit found that Dupuis-Mays "increasingly aggravated, repeatedly spitting at the officers, and failing to comply with instructions to stop—to the floor, even though he collided with a cabinet on the way down." *Id. at* 297.  The Fifth Circuit held that the Plaintiff "failed to identify precedent clearly establishing that the officers' conduct violated Dupuis-Mays's constitutional rights on the excessive force claim." *Id.*

Regarding the Plaintiff's filing false statements claim against the Officers, the Fifth Circuit found, that the Plaintiff "fails to identify a single case suggesting that an individual has a right to be free from inaccuracies in an after-the-fact police report or that an inaccurate report serves as a sort of continuing constitutional violation." *Id.*  Therefore, the Plaintiff "has not shown a violation of a clearly established constitutional right." *Id.* at 298.

The Fifth Circuit's decision was not erroneous.  Therefore, the "Law of the Case" applies in this matter. The Fifth Circuit rendered a Judgment of dismissal with prejudice which dismissed Officer Palko and Officer Hudgens from this suit.  Consequently, the Plaintiff's claims against McKinney wholly fail as a matter of law because any liability that attaches to McKinney is based on the Officers' actions.  The Officers were completely exonerated.  Therefore, McKinney is entitled to a Judgment of Dismissal with Prejudice.

The Plaintiff makes a § 1983 Claim against McKinney in her *Complaint* filed in the District Court.  *Plaintiff's Complaint,* ECF No. 1.   A successful § 1983 Claim requires that "a plaintiff must first show a violation of the Constitution or of federal law, and then show that the violation was committed by someone acting under color of state law." *Brown v. Miller*, 519 F.3d 231, 236

(5th Cir. 2008). However, "it is clear that a municipality may not be held liable under § 1983 on the basis of respondeat superior." *Johnson v. Deep East Texas Regional Narcotics Trafficking Task Force*, 379 F.3d 293, 308-309 (5th Cir. 2004), *citing Monell v. Dept. of Soc. Servs*, 436 U.S. 658 (1978). "A municipality's liability under § 1983 requires, among other things, either the unconstitutional action of municipal policy makers or a municipal policy." *Id*.

McKinney contends that this case must be dismissed, as a matter of law. A § 1983 claim against a government municipality for violation of Constitutional rights "requires proof of three elements: (1) a policymaker; (2) an official policy; and (3) violation of constitutional rights whose moving force is the policy or custom." *Hampton Co. Nat'l Sur., LLC v. Tunica Cnty*., 543 F.3d 221, 227 (5th Cir. 2008); *See Bishop v. Arcuri*, 674 F.3d 456, 467 (5th Cir. 2012). A § 1983 claim against a government municipality requires the Court to determine two issues: "(1) whether plaintiff's harm was caused by a constitutional violation, and (2) if so, whether the city is responsible for that violation." *Doe v. Covington Cty. Sch. Dist.*, 675 F.3d 849, 867 (5th Cir. 2012) (internal quotation marks omitted). Without an underlying constitutional violation, a Plaintiff cannot succeed on their § 1983 claims. *Forbes v. Harris County*, No. H-17-2256, 26, 2019 U.S. Dist. LEXIS 80053 (S.D. Tex. 2019). Without an underlying constitutional violation, policy, practice or custom claims fail as a matter of law. *Whitley v. Hanna*, 726 F.3d 631, 649 (5th Cir. 2013). A municipality cannot be liable if a person has suffered no constitutional injury at the hands of an individual police officer. *Bustos v. Martini Club*, 599 F.3d 458, 467 (5th Cir. 2010). The Fifth Circuit found that neither Officer Palko nor Officer Hudgens committed a constitutional violation in their conduct giving rise to this lawsuit. ECF No. 85. McKinney must be dismissed with prejudice.

Further, Plaintiff has failed to identify a policymaker, or a pattern, practice, or custom that would give rise to liability against the City of McKinney.

### i.     There was no policymaker involved in this incident or any Policy that is allegedly the Cause/Moving Force of a Constitutional Violation.

The Plaintiff makes a § 1983 claim against McKinney.  Plaintiff Rich neither identifies nor make an allegation or claim against any person that would be identified as a Policymaker with "final policymaking authority." *Bowden v. Jefferson Cty.*, 676 F. App'x 251, 253 (5th Cir. 2017). A Policymaker would have "the authority to make municipal policy is the authority to make final policy without any constraints on the official's discretionary decisions." *Merritt v. Harris County*, 775 S.W.2d 17, 24 (Tex. App.—Houston [14th Dist.] 1989). In her *Complaint*, Plaintiff makes conclusory allegations that McKinney employs a "policy, practice or custom that permits police officers to use excessive force and file false police reports." ECF No. 1 at ¶ 41. Plaintiff's complaint makes no specific factual allegations of the City's policies and simply alleges "policy, practice, or custom." In *Whitley v. Hanna*, the Fifth Circuit held that such allegations are insufficient to survive dismissal. *Whitley*, 726 F.3d at 648-49. A conclusory description of a policy or custom is insufficient. *See Spiller v. City of Tex. City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997). A pattern requires similarity and specificity, prior incident cannot simply be for any and all bad or unwise acts, but rather must point to the specific violation in question. *Peterson v. City of Fort Worth*, 588 F.3d 838, 851 (5th Cir. 2009). In McKinney's First set of Interrogatories, the City requested: "(b). . . McKinney's specific actions or omission that you contend violated contend violated Gavrilla Covaci Dupuis-Mays' right(s))." Plaintiff again responded with a boilerplate response, stating:

"The Plaintiff claims the Defendant City of McKinney employs a policy, practice, or custom that permitted the Defendant Officers to violate Plaintiff's Fourth and Fourteenth

Amendment rights as guaranteed by the United States Constitution. The City of McKinney has ratified all the Defendant officers' misrepresentations before, during, and after the violations of Gavi Dupuis Mays' civil rights."

The Supreme Court held that, "the identification of policymaking officials is a question of state law". *St. Louis v. Praprotnik*, 485 U.S. 112, 124, 108 S. Ct. 915, 924 (1988).  A Court has the "responsibility to identify for the jury, as a matter of state law, those officials who 'speak with final policymaking authority' for the defendant governmental entity concerning the action that allegedly caused a violation of constitutional rights." *Harris County v. Nagel*, 349 S.W.3d 769, 790 (Tex. App.—Houston [14th Dist.] 2011).  It is a matter of state law that determines if a "particular individual is a final policymaker." *Bowden*, 676 F. App'x at 254.

Under Texas Law, a Policymaker is defined as:

one who "takes the place of the governing body in a designated area of city administration," and who (1) decides the goals for a particular city  function, (2) devises the means of achieving those goals, (3) acts in the place of the governing body in the area of delegated responsibility, and (4)  is not supervised except as to the totality of performance.

[T]he delegation of policymaking authority requires more than a showing of mere discretion or decision-making authority on the part of the delegee. . .. The governing body must expressly or impliedly acknowledge that the agent or board acts in lieu of the governing body to set goals and to structure and design the area of the delegated responsibility, subject only to the power of the governing body to control finances and to discharge or curtail the authority of the agent or board.  *Id*.

The Plaintiff fails to identify the existence of a Final Policymaker in connection with any complained-of policy or Constitutional violation.  Plaintiff's supposed claims rise from the actions of Detective Palko and Officer Hudgens (collectively identified as "Individual Defendants") who were performing their sworn duty enforcing the law.

Initially, Officers Hudgens and Palko were included in Plaintiff's claims/suit. They filed dispositive motions based upon no Constitutional violations and Qualified Immunity. Their motions were granted by the United States Court of Appeals. ECF No. 85. On June 4, 2020, in accordance with the Judgment issued by the Fifth Circuit Court of Appeals, this Honorable Court dismissed Plaintiff's claims against the Individual Defendants with prejudice. ECF No. 89. They are no longer part of these proceedings.

The dismissed Officers were/are not Final Policymakers, and Plaintiff never identified them as such. The Officers hold no formal or informal policy-making positions in McKinney. Furthermore, the Plaintiff's *Complaint* and discovery responses fail to identify any McKinney Official other than Officer Palko, Officer Hudgens and Sergeant Agan. As was previously discussed, these Officers are not Final Policymakers. In *Plaintiff's Brief and Response to the City of McKinney's Motion for Summary Judgment* (ECF No. 135), Plaintiff for the first time identifies Chief Conley as a Final Policymaker for the City. Plaintiff relies solely on § 63 of the Charter to argue that Chief Conley is a Final Policymaker for the City. However, § 63 explicitly states, "The Chief of Police shall have immediate direction and control of the Police Department, **subject to the supervision of the City Manager, and also subject to such rules, regulations and orders as the City Manager may prescribe not inconsistent with the ordinances of the City**. . ." The City Charter explicitly states that the Chief of Police is not a Final Policymaker within McKinney, as all of his decisions must be approved by the City Manager, and subsequently the City Council.

The Plaintiff does not make a claim against any agent or delegate of McKinney that could be identified as a Final Policymaker. Chief Conley, the current chief of McKinney PD, is not a Final Policymaker. App. In Supp. Conley Dep. 14:4-16. The McKinney City Charter § 19 identifies the City Council as the Final Policymaker for the City. Section 19 states, "Except as

otherwise provided by this Charter, all powers shall be vested in the Council." No other section of the City's Charter identifies any other Policymaker within the City. Notably, in Section 63, the Charter provides that the Chief of Police is supervised by the City Manager, and any decisions made by the City Manager cannot conflict with applicable laws and Charter provisions. Ultimately, the McKinney City Council is the Final Policymaker and must approve every policy as per the city charter. *Id.* Therefore, the Plaintiff wholly fails in identifying a Final Policymaker necessary for a § 1983 claim against a government municipality as prescribed by *Bowden v. Jefferson*.

### ii. There is no policy, practice, or custom that gives rise to liability.

Plaintiff claims that McKinney "employs a policy, practice, or custom that permits police officers to use excessive force and file false police reports." *Plaintiff's Complaint*, ECF No, 1 at ¶ 9. An official policy is evidenced by, "duly promulgated policy statements, ordinances or regulations, but a custom may also suffice." *Doe v. United States*, 831 F.3d 309, 318 (5th Cir. 2016) (internal quotes omitted). A custom is persistent widespread practice that "is so common and well-settled as to constitute a custom that fairly represents policy." *Id*. To determine if a City's actions amount to an 'official policy' that gives rise to municipal liability, the Courts assess whether:

> A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or,
>
> A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority. Actions of officers or employees of a municipality do not render the municipality liable under § 1983 unless they execute official policy as above defined.

*Dall. Police Ass'n v. City of Dall.*, Civil Action No. 3:03-CV-0584-D, 2004 U.S. Dist. LEXIS 20651, at *7-8 (N.D. Tex. 2004).

The Plaintiff does not identify any policy, policy statement, ordinance, regulation or decision that has been officially adopted or promulgated by the city of McKinney that caused or resulted in unconstitutional acts or violations that would give rise to §1983 liability.   Plaintiff's *Complaint* fails to refer to any actual McKinney Official Policy or General Orders alleged to be moving force behind an unconstitutional act.   The Plaintiff incorrectly claims that "the apprehension of Dupuis-Mays was not in accordance with McKinney Police Department General Orders."   *Plaintiff's Complaint*, ECF No. 1 ¶ 7.   The Fifth Circuit cleared the Officers of any Constitutional violations.   As stated previously, the Fifth Circuit found that the Officers "had a lawful basis to detain him under the Texas Health and Safety Code and complied with the Code's requirements by taking him directly to Green Oaks."   *Rich*, 920 F.3d at 296.   Additionally, the Officers abided by McKinney PD General Orders that were in place at the time of the Incident. Conley Dep. 29:1-32:25.

The Plaintiff does not provide any evidence that any alleged violations were so widespread to be considered a custom or practice.   Plaintiff's claims rise from the supposed violations by Officer Palko and Officer Hudgens during an interaction with Dupuis-Mays, but the Officers were cleared and dismissed with prejudice by the Fifth Circuit.   The Plaintiff did not present evidence of any other widespread alleged Constitutional violations thereby establishing a custom.   The Plaintiff's claims rely on single incident.   Therefore, the Plaintiff's § 1983 claim against a government municipality fails because it does not identify a policy, custom, or practice necessary for such a claim.

1.     __There is no policy that violated the Constitution or Federal Law.__

Municipal liability for § 1983 violations occurs if a deprivation of constitutional rights was inflicted pursuant to official custom or policy. *Piotrowski v. City of Hous.*, 237 F.3d 567, 579 (5th Cir. 2001). Official policy is ordinarily contained in duly promulgated policy statements, ordinances, or regulations. *Id*. But a policy may be evidenced by custom if:

> "a persistent, widespread practice of City officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents municipal policy. . . Actions of officers or employees of a municipality do not render the municipality liable under § 1983 unless they execute official policy as above defined."

*Webster v. Houston*, 735 F.2d 838, 841 (5th Cir. 1984).

While an unconstitutional official policy renders a municipality liable under § 1983, a facially innocent policy will support liability if it was promulgated with deliberate indifference to the known or obvious consequences that constitutional violations would result. *Piotrowski*, 237 F.3d at 579. Deliberate indifference is a high standard, and a showing of simple or even heightened negligence will not suffice to prove municipal liability. *Id*. It follows that each and any policy which alleged *must be identified by a plaintiff*, and it must be determined whether each one is facially unconstitutional. *Id*. (emphasis added). Deliberate indifference is a degree of culpability beyond mere negligence or even gross negligence; it 'must amount to an intentional choice, not merely an unintentionally negligent oversight. *Shumpert v. City of Tupelo*, 905 F.3d 310, 316 (5th Cir. 2018). These requirements must not be diluted, for where a court fails to adhere to rigorous requirements of culpability and causation, municipal liability collapses into respondeat superior liability. *Id*.

There must be a direct causal link between the municipal policy and constitutional deprivation. *Piotrowski*, 237 F.3d at 580. Further, the policy must be the moving force behind the

violation. *Id*. The Plaintiff must establish both the causal link ("moving force") and the City's degree of culpability ("deliberate indifference" to federally protected rights). *Id*. Here, since there is no constitutional violation, the Plaintiff will fail to prove a causal link as a matter of law.

The Plaintiff fails to identify both a policy, custom or practice necessary for a § 1983 claim, and any constitutional violation, since the Fifth Circuit held that Officers Palko and Hudgens are innocent of any constitutional violation. The were no constitutional violations. The Plaintiff cannot identity any McKinney employee or representative guilty of violating the Constitution. Therefore, it is impossible for the Plaintiff to establish any McKinney Policy that violated federal law/the Constitution or authorized or directed the deprivation of federal rights.

### 2. <u>There was no deliberate indifference by McKinney in enforcing policy.</u>

Plaintiff mentions in passing deliberate indifference in their *Complaint*. *Plaintiff's Complaint*, ECF No. 1 ¶ 9. Plaintiff must meet her burden of showing that the alleged failure of a policy was adopted or maintained with deliberate indifference to the known or obvious fact that constitutional violations would result, by way of "at least a pattern of similar violations." *See Johnson,* 379 F.3d at 309, *quoting Burge v. St. Tammany Parish*, 336 F.3d 363, 370 (5th Cir. 2003), cert. denied, 124 S.Ct. 1074 (2004). A pattern requires "similarity, specificity, and sufficiently numerous prior incidents." *Davidson v. City of Stafford* at 396. Deliberate indifference requires that an official have subjective knowledge of the risk of harm, which "cannot be inferred from a…failure to act reasonably." *See Hare*, 74 F.3d at 649.

The Fifth Circuit notes that the deliberate indifference standard is an "extremely high" one to meet. *See Domino*, 239 F.3d 756. Deliberate indifference requires "unnecessary and wanton intentional infliction of pain repugnant to the conscience of mankind." *Norton v. Dimazana*, 122

F.3d 286, 291 (5th Cir. 1997).  State actors act with deliberate indifference when they "know of and disregard an excessive risk to the victim's health or safety." *Whitley v. Hanna*, 726 F.3d 631, 641 (5th Cir. 2013).

The Plaintiff fails to establish a pattern of similar violations.  The Plaintiff does not identify specific and numerous incidents similar to the incident in the *Complaint*.  Additionally, there were no Constitutional violations.   Therefore, establishing deliberate indifference is immaterial. Deliberate indifference cannot be established without a Constitutional violation.

### 3.    Failure to train/supervise does not indicate deliberate indifference.

The Fifth Circuit has laid out three clear requirements for any failure to train claim: "(1) the municipality's training policy or procedure was inadequate; (2) the inadequate training policy was a 'moving force' in causing violation of the plaintiff's rights; and (3) the municipality was deliberately indifferent in adopting its training policy." *Valle v. City of Hous.*, 613 F.3d 536, 544 (5th Cir. 2010). Every Officer at the City of McKinney is required to meet state requirements established by the Texas Commission on Law Enforcement ("TCOLE"). The meeting of state standards means there can be no liability unless the Plaintiff shows that this legal minimum of training was inadequate. *Id*. If the officers involved in any alleged constitutional violation have met TCOLE standards, and the plaintiff fails provide any argument or evidence that these standards are inadequate, the municipality cannot be liable for any alleged failure to train. *Id*.

The Plaintiff claims an unconstitutional failure to train/supervise that occurs because of deliberate indifference to an unconstitutional/continuing problem.  The Plaintiff alleges that McKinney failed to "instruct, supervise, control, and /or discipline" Officer Palko and Officer Hudgens. *Plaintiff Complaint*, ECF No, 1 ¶ 10.  A municipality's failure to train or supervise must cause the alleged injury in order for the municipality to be liable under § 1983.  *City of Canton v.*

*Harris*, 489 U.S. 378, 390 (1989).   Again, the failure to train or supervise must result in a "deliberate indifference" to the rights of its citizens in order for it to be held as an actionable governmental "policy" or "custom" under § 1983.   *Id.* at 389.   Inadequate training claims cannot be maintained based on a single incident.   *Wassum v. City of Bellaire*, 861 F.2d 453, 455 (5th Cir. 1988).

The Plaintiff has not alleged or provided any evidence that any McKinney Police Officer failed to meet required TCOLE standards and requirements.   The Plaintiff does not plead any specific incident that was a byproduct of failure of training or supervision by McKinney.   The Plaintiff does not provide evidence that any McKinney PD Officer did not maintain licensure or certification requirements.   When state law mandates the training required of a city's officers, as in Texas, a plaintiff generally cannot satisfy the elements to support a claim of inadequate training under § 1983.   *Benavides v. Cty of Wilson*, 955 F.2d 968, 973 (5th Cir. 1992).

To summarize, the Plaintiff's *Complaint*, discovery answers, and deposition testimony fails to identify a specific McKinney policy, McKinney PD policy, custom or practice which is a necessary element of a § 1983 claim against a government municipality.   The Plaintiff does not identify a policy that violated the Constitution, federal law or deprived a person of federal rights. The Plaintiff does not establish a pattern of incidents to suggest the adoption of a custom that was the moving force behind a Constitutional violation.   The Plaintiff unsuccessfully attempts to use the Dupuis-Mays's incident alone to establish alleged widespread police misconduct.   The Plaintiff cannot establish deliberate indifference because there were no Constitutional violations.

### iii.     There were no violations of Plaintiff's Constitutional rights.

The Plaintiff claims that the Officers' "actions violated 42. U.S.C. § 1983, the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution."   *Plaintiff Complaint*, ECF

No. 1 p. 10.  The third element of a § 1983 claim against a government municipality is that there must be a violation of Constitutional Rights and that a policy or custom was the moving force behind the violation. Moving force is established by "either that the custom or policy was the cause in fact of the Constitutional violation or that the Constitutional violation resulted from the execution of the official policy or custom." *See Pineda*, 124 F. Supp. 2d at 1066.  The Police Officers have been dismissed with prejudice from this matter.  The Fifth Circuit rendered Judgment in Officer Palko and Officer Hudgens's favor and awarded costs to the Officers.  The Fifth Circuit found no Constitutional violations.  The Fifth Circuit examined the Officer's actions and found them to be lawful.

## 1.    There was no Fourth Amendment Violation.

The Plaintiff alleges that McKinney violated Dupuis-Mays's Fourth Amendment rights through unlawful detention, excessive force and false reporting.   The Fourth Amendment guarantees "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  USCS Const. Amend. 4. An Officer may take a person  into custody without a warrant if "the officer has reason to believe and does believe that a person is mentally ill and because of that illness there is a substantial risk of serious harm to the person or to others unless the person is immediately restrained, and believes that there is not sufficient time to obtain a warrant before taking the person into custody."  *Cantrell v. City of Murphy*, 666 F.3d 911, 923 (5th Cir. 2012).

A "mentally ill" person poses a substantial risk of serious harm to himself or others by "the person's behavior; or evidence of severe emotional distress and deterioration in the person's

mental condition to the extent that the person cannot remain at liberty."  Tex. Health & Safety Code § 573.001.   An Officer's reason to take a person into custody can be based on the "representation of a credible person; or on the basis of the conduct of the apprehended person or the circumstances under which the apprehended person is found." *Id*.  Once in custody, the Officer must immediately "transport the apprehended person to: the nearest appropriate inpatient mental health facility; or a mental health facility deemed suitable by the local mental health authority." *Id*.

The parties do not dispute that Dupuis-Mays is "mentally ill" under Texas law. *Rich v. Palko* at 292.  The Officers relied on the representations of credible persons to believe that Dupuis-Mays met the statutory criteria for apprehension.   The Group Home's staff called 911 for assistance.  *Id*.  The Group Home staff informed the Officers that Dupuis-Mays's behavior posed a substantial risk to the other residents of the Group Home.  *Id*. His caretakers stated that he was in a "psychotic episode," "verbally and physically aggressive towards staff."  *Id*.  He threatened staff members and children, disturbed property in the backyard, soiled and refused to clean himself, and ignored the instructions of the Group Home staff.  *Id*.  The Group Home staff were frightened to transport Dupuis-Mays on their own.  *Id*.  Therefore, they called 911 for police assistance.  *Id*.

The Officers found Dupuis-Mays covered with feces.  *Id*. They ascertained that Dupuis-Mays had attempted to run away from the Group Home several times that evening.  *Id*.   Based on the representations of credible persons and the above-listed factors, the Officer Palko reasonably concluded that Dupuis-Mays was mentally ill and posed a substantial risk of serious harm to himself or others.   Accordingly, the Officers lawfully detained Dupuis-Mays and transported him to Green Oaks. The Fifth Circuit dismissed the McKinney Officers from this suit

with prejudice.   Therefore, McKinney did not violate the Fourth Amendment by unlawfully detaining Dupuis-Mays.

The McKinney PD General Orders and Policy at the time of the Incident was that any detainee who did not need a medical evaluation, would be transported to the nearest *appropriate* psychiatric facility (emphasis added).  App. In Supp. Conley Dep. 29:16 – 30:5. McKinney was part of the NorthStar Network which had contracted with Green Oaks for psychiatric services for emergency detentions.   App. In Supp. Conley Dep. 30:17 – 31:24. The McKinney Officers properly evaluated that Dupuis-Mays did not require a medical evaluation based on the totality of the circumstances and not the statement of any one individual.  He was then properly transported to Green Oaks, in accordance with state law, for psychiatric care.   Therefore, the McKinney Officers properly complied with the relevant McKinney General Orders and Policy and state statutes that were in place at the time of the Incident.

The Officers did not use excessive force to restrain Dupuis-Mays.  The Officers attempted to calm Dupuis-Mays after they arrived at Green Oaks.  *Id.*  After Dupuis-Mays arrived at Green Oaks, he became increasingly aggravated, repeatedly spitting at the Officers, and failed to comply with instructions from the Officer to stop. *Id.*  The Fifth Circuit ruled that the Officers did not use excessive force when attempting to restrain Dupuis-May. *Id.*  Dupuis-Mays's injuries were not the product of excessive force.     The Officers intervened only after Dupuis-May engaged in inappropriate behavior. As was stated previously, the Fifth Circuit dismissed the Officers from this matter with prejudice.  Therefore, McKinney did not violate the Constitution with use of excessive force.

The Plaintiff claims that the Officers prepared false police reports to justify an unlawful arrest.  A person is not guaranteed a "right to a completely accurate police report. *Smith v. Patri*,

99 F. App'x 497, 498 (5th Cir. 2004).  The Plaintiff specifically identifies Officer Hudgens's post-incident report for certain inaccuracies.  Officer Hudgens corrected his report once he became aware of inaccuracies.  *See Rich*, 920 F.3d at 293.  The Plaintiff fails to identify which of Dupuis-Mays's Constitutional rights was violated by Officer Hudgens's mistake.  As was stated above, the Officers justifiably arrested Dupuis-Mays.  Therefore, there was not a Fourth Amendment violation regarding the false report claim.

### 2.    There was no Eighth Amendment violation.

The Plaintiff claims that McKinney violated Dupuis-Mays's Eighth Amendment rights.  The Eighth Amendment ensures that a person is not subject to "cruel and unusual punishments."  USCS Const. Amend. 8.  The Eighth Amendment applies to inmates held after conviction of a criminal offense.  *Carlton v. Fearneyhough*, No. 07-10676, 2008 U.S. App. LEXIS 5410 (5th Cir. 2008).  The Eighth Amendment does not apply to pre-conviction treatment of an arrested suspect.  *Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 103 S. Ct. 2979 (1983).  Therefore, there was not an Eighth Amendment violation.

Even if Dupuis-Mays was found to be a pretrial detainee, McKinney did not violate his constitutional right to be secure in "his basic human needs, such as medical care and safety."  *Hare v. City of Corinth*, 74 F.3d 633, 648 (5th Cir. 1996).  No McKinney "official acted or failed to act with deliberate indifference to the detainee's needs.  *Id*.  Additionally, no McKinney "official had subjective knowledge of a substantial risk of serious harm to a pretrial detainee."  *Id. at 650.*  There was no excessive force.  As stated previously, the Officers were dismissed with prejudice.  In this situation, the "force was applied in a good-faith effort to maintain or restore discipline."  *Estate of Rice v. Corr. Med. Servs.*, No. 3:06-CV-697 RM, 2009 U.S. Dist. LEXIS 52149, at *42 (N.D. Ind.

2009).   This Honorable Court dismissed Plaintiff's Eighth Amendment against the McKinney Officers.  *See* ECF No. 43.  Therefore, there was not an Eighth Amendment violation.

### 3.      There was no Fourteenth Amendment violation.

The  Plaintiff  claims  that  McKinney  violated  Dupuis-Mays's  Fourteenth  Amendment rights.  The Fourteenth Amendment applies the Fourth and Eighth Amendment to the states.  Since there is no violation of Dupuis-Mays's Fourth and Eighth Amendment rights, there is no violation of his Fourteenth Amendment rights.

## E.      STIPULATIONS AND UNCONTESTED FACTS

1.      Jeri Lynn Rich is the adoptive mother and legal guardian of Gavrila Covaci Dupuis-Mays.

2.      Dupuis-Mays "sustained a brain injury as an infant."

3.      Dupuis-Mays has cerebral palsy, mental retardation, bipolar disorder, depression, ADHD, and epilepsy.

4.      Under Texas Law, Dupuis-Mays is considered "mentally ill." Because he has an IQ of 44. [1]

5.      At the time of the July 11, 2015 incident, Dupuis-Mays resided at a Group Home in McKinney, Texas.   The Group Home was staffed and operated by D&S Community Services.

6.      On July 2, 2015, Dupuis-Mays was admitted Green Oaks Wysong for inpatient psychiatric evaluation for depressed ideation.  He was released on July 8, 2015.

7.      He was taken to Green Oaks Dallas on July 9, 2015 by D&S Community Services Staff.  He was discharged on July 10, 2015.

---

[1] Plaintiff added this sentence.  McKinney objects to the inclusion of that specific sentence regarding his IQ.

F.      **CONTESTED ISSUES OF FACT**[2]

1.      Whether the Defendant violated the Constitutional Rights of Gavrila Covaci Dupuis-Mays.

2.      Whether the Defendant's policies were a proximate cause of Gavrila Covaci Dupuis-Mays injuries.

3.      Whether the City of McKinney ratified the alleged Constitutional violations that were suffered by Gavrila Covaci Dupuis-Mays?

4.      Whether Gavrila Covaci Dupuis-Mays   rights were violated in violation of  42 U.S.C. §        1983, the Fourth, Eighth and Fourteenth  Amendments to the United States  Constitution when he  was hand cuffed, transported to Dallas, Texas rather than the closest        mental health facility, beaten and then  left on the  floor of Green Oaks Hospital handcuffed.[3]

5.      The amount and type of damages the Plaintiff may recover.

6.      Any contested issue of law listed below that this Court determines to be an issue of fact.

7.      Gavrila Covaci Dupuis-Mays   was, on the occasion in question, a disabled person, both  physically and mentally.   Gavrila Covaci Dupuis-Mays IQ is 44.   Gavrila Covaci Dupuis-Mays   suffers from paralysis in his left arm, left leg and left side of his body.

---

[2] Plaintiff submits the City of McKinney is liable as a matter of law and will submit Plaintiff's Rule 50 Motion at the appropriate time.

[3] McKinney objects to the inclusion of "when he was handcuffed, transported to Dallas, Texas, rather than the closest mental health facility, beaten, and then left on the floor of Green Oaks Hospital handcuffed." as an improper comment on the evidence, and as such should be excluded from any contested issues of fact.

8.      The events that form the bases of Rich's claims for Gavrila Covaci Dupuis-Mays occurred in McKinney, Texas and later in Dallas, Texas on or about July 11, 2015.

9.      The City of McKinney had in place two written policies[4] that contravene the Constitution of the United States of America.

10.     There was no psychiatrist ever present, in person, by phone or in any way, nor any that ever provided an opinion about the potential need for a mental health detention of Gavrila Covaci Dupuis-Mays at 2512 Timberbrook Trail, McKinney Texas, on July 11, 2015.

11.     The City of McKinney failed to initiate prompt medical care, when Gavrila Covaci Dupuis-Mays was left on the floor of Green Oaks handcuffed until the Security Guard at Green Oaks removed the handcuffs.

12.     The City of McKinney did not discipline officers Hudgens and Palko for anything they did or didn't do involving the detention, the  reporting of the incident, the handcuffing of Gavrila Covaci Dupuis-Mays or the injuries suffered by Gavrila Covaci Dupuis-Mays that occurred on July 11, 2015.

13.      Greg Conley, Chief of Police, stated under oath, that officers Palko and Hudgens did nothing wrong.  Between July 10 and 11, 2015, the McKinney PD was called to the Group Home four times because Dupuis-Mays kept attempting to run away.

14.     On July 11 at 2:01 a.m., Manager Holley-West called the McKinney Police Department for emergency law enforcement assistance to transport Dupuis-Mays to Green Oaks.

---

[4] The policy to transport to Dallas Texas, rather than McKinney Texas for mental health detentions and the no discretion policy to handcuff all persons suspected of being in need of a mental health detention.

15. The 911 call described Dupuis-Mays as "in a psychotic phase, where he is verbally and physically aggressive towards staff" and that he was "covered in feces and he's refusing to bathe." The Group Home called the McKinney PD because when they "called Green Oaks, and they told me to call y 'all." Manager Holley-West and the other staff members did not feel safe transporting Dupuis-Mays. According to staff, Dupuis-Mays was threatening the other occupants of the Group Home. Dupuis-Mays had defecated on himself and had removed his clothes and put them on the porch. He had scattered tables in the Group Home's backyard and refused to follow staff instructions. Manager Holley-West claimed Dupuis-Mays had "just threatened our children" who accompanied them to when they were called to deescalate Dupuis-Mays.

16. McKinney Police Officers Palko and Hudgens responded to the 911 call.

17. When Officers Palko and Hudgens arrived at the group home, they briefly conversed with one of Dupuis-Mays's caretakers, who reported that Dupuis-Mays was becoming increasingly psychotic and that Green Oaks directed the group home staff to bring him in for care.

18. Officers Palko and Hudgens approached Dupuis-Mays, who was covered in feces, and spoke with him at length. Dupuis-Mays agreed to bathe.

19. After convincing Dupuis-Mays to bathe, Officers Palko and Hudgens spoke with Manager Holley-West.

20. Manager Holley-West told the officers what had precipitated her 911 call. Dupuis-Mays had defecated on himself and had removed his clothes and put them on the porch. He had scattered tables in the home's backyard and refused to follow staff

instructions. Staff members also reported that Dupuis-Mays's aggression had been increasing and that his psychiatrist told the staff that their only option until Monday was to transport Dupuis-Mays back to Green Oaks for an assessment.

21.   After Dupuis-Mays had showered and dressed, he voluntarily approached the McKinney Officers and spoke with them.  After speaking to Dupuis-Mays for ten minutes, the Officers handcuffed Dupuis-Mays and transported him to Green Oaks at the request of the Group Home staff.  The Officers travelled directly from the Group Home to Green Oaks Hospital and the journey took approximately thirty minutes. The Officers and Dupuis-Mays arrived without incident.

22.   After arriving at Green Oaks, the Officers escorted Dupuis-Mays to the waiting room still handcuffed.  Patients who arrive at Green Oaks must sign-in and then wait for the medical staff to call them to be medically evaluated.  The medical evaluation is conducted in the triage room separate from the waiting area.

23.   While in the waiting room, Dupuis-Mays became combative.  The Officers requested that he sit down on multiple occasions.  Dupuis-Mays eventually stood up from the chair and began talking to the officers, saying, among other things, "I'll be glad you go to hell [sic]," and "I hate Police Officers."  Video from the Green Oaks Hospital waiting room shows Dupuis-Mays in an agitated and threatening state.

24.   There were other patients and law enforcement in the waiting room.  After Dupuis-Mays refused to sit down, the Officers forcibly seated Dupuis-Mays to control him. While seated, Dupuis-Mays spat directly in Detective Palko's face.  The Officers

were then forced to place Dupuis-Mays's head between his legs to pacify him. Even in this position, Dupuis-Mays continued spitting at and berating the Officers.

25.     Eventually, Dupuis-Mays was called to the triage room by a nurse.  In the triage room, Dupuis-Mays was seated in a chair in one corner of the room with a small file cabinet directly to his right and the triage nurse's desk to the right of the cabinet. A second file cabinet was in the corner opposite Dupuis-Mays, about three to four feet in front of him.  The Officers stood by a door across from Dupuis-Mays because quarters were tight in the triage room.  Because of the file cabinets' positioning, the corridor from the Officers to Dupuis-Mays was narrow.

26.     While being triaged by the nurse, Dupuis-Mays grew even more agitated and began saying, "I hate Police Officers! I hate 'em!"  The triage nurse urged him to "stay calm, but Dupuis-Mays responded, "Hell no!"  The Officers tried to calm Dupuis-Mays (how/explain).  However, in escalating volume, Dupuis-Mays continued berating the Officers.  He shouted, "I hate police officers!  F*** them police officers!  I hope cops die!"

27.     The nurse left the triage room to retrieve medication for Dupuis-Mays.  Detective Palko and Officer Hudgens were standing by the door.  Dupuis-Mays spat toward Detective Palko.  Detective Palko stepped back and told Dupuis-Mays, "Don't spit on me, bud." After the warning, Dupuis-Mays leaned forward, stared at Detective Palko and spat directly at his face.

28.     Detective Palko stepped across the room toward Dupuis-Mays through the opening left by the two file cabinets.  Detective Palko placed both of his hands-on Dupuis-Mays's head.  Detective Palko began moving him down and diagonally from his

chair to the middle of the room.  Detective Palko stood with his body in front of the corner filing cabinet, his left foot in front of and parallel with the cabinet's side.

29.     Simultaneously, Officer Hudgens approached and placed his right hand on Dupuis-Mays's right shoulder blade and his left hand on Dupuis-Mays's handcuffed hands. Midway to the ground, Dupuis-Mays's torso began to turn toward the corner cabinet, his right foot apparently caught on the file cabinet directly to the right of his chair.  Detective Palko was still in front of the corner cabinet.  As Dupuis-Mays twisted, Detective Palko's left elbow bumped the corner cabinet, his hand fell off Dupuis-May's head.  Dupuis-Mays's head fell into the lowest drawer-handle of the corner cabinet.

30.     The Officers promptly helped Dupuis-Mays up and carefully moved him to a seated position on the floor.  The Officers did not apply additional force.  Dupuis-Mays sustained a five-inch gash and was bleeding. The Green Oaks medical staff immediately attended to Dupuis-Mays.

31.     After the incident, Officer Hudgens filed a post-incident report with McKinney Police Department. That report did not comport with the video from the triage room, prompting McKinney Police Department to conduct an internal affairs investigation. McKinney Police Chief Conley tasked McKinney Police Sergeant Agan with the internal affairs investigation.

32.     During the internal affairs investigation, Sergeant Agan spoke with Officer Palko, who accurately recalled and recounted the events on July 11, 2015.   Officer Hudgens later reviewed the video and audio of the incident and corrected his report.

## G.      CONTESTED ISSUES OF LAW[5]

**Plaintiff's Issues of Law:**

1.      Whether Plaintiff's rights were violated under 42 U.S.C. § 1983, the Fourth Amendment

to the United States Constitution, the Eighth Amendment and the Fourteenth Amendment?

2.      The amount and type of damages the Plaintiff may recover?

3.      The amount of attorneys' fees and costs, Plaintiff is entitled to because of the Constitutional

violations as well as the false assertion that a psychiatrist was present, who supposedly

stated Gavrila Covaci Dupuis-Mays was psychotic and needed to be restrained?

4.      Any contested issue of fact listed above that this Court determines to be an

issue of law.

**Defendants' Issues of Law:**

## H.       ESTIMATED LENGTH OF TRIAL

The parties estimate that the trial of this case will take five days.

## I.      ADDITIONAL MATTERS AIDING IN CASE DISPOSITION

Plaintiff:

Plaintiff has filed the required Rule 26 Pre-Trial disclosures.  The Defendant has not.

Plaintiff will object to any offer by the Defendant as it is untimely.  Plaintiff's Exhibits,

witness list and deposition designations was filed on May 28, 2020 Doc. 147.  The items are

incorporated herein by reference as if set fort verbatim.  Plaintiff is filing her objections to the

Defendant's exhibit list and deposition designations forthwith.  Defendants:

Both Plaintiff and Defendant did not file their respective Pretrial Disclosures thirty (30)

before Trial as required by the Federal Rules of Civil Procedure.  *See* USCS Fed Rules Civ Proc

---

[5] Plaintiff submits the City of McKinney Texas is liable as a matter of law and will be filing Plaintiff's Rule 50 motion at the appropriate time.

R 26. This Honorable Court "has broad discretion in deciding whether a Rule 26(a) violation is substantially justified or harmless." *Nguyen v. Versacom, LLC*, Civil Action No. 3:13-CV-4689-D, 2016 U.S. Dist. LEXIS 177851, at *14 (N.D. Tex. 2016).  The Court reset the Final Pretrial Conference to June 11, 2020 and the Jury Trial to June 15, 2020.  *See* ECF No. 143.  The Parties failure to make timely pretrial disclosures was harmless, and the Parties should be permitted to make the required disclosures in advance of the reset Trial date.  Further, the Parties have agreed to exchange Exhibits on June 8, 2020 by 5:00 P.M.

**J.** **Defendant's Witness List**

| Witness No. | Name of Witness | Fact or Expert | Will be called/Maybe called/Presented by Deposition Testimony |
|---|---|---|---|
| 1 | Officer Michael Palko | Fact | Will be called |
| 2 | Officer Keith Duane Hudgens | Fact | Will be called |
| 3 | Chief Greg Conley | Fact | Will be called |
| 4 | Officer Joe H. Ellenburg | Fact | May be called |
| 5 | Chief Randy Agan | Fact | Will be called |
| 6 | Officer Erik Johnson | Fact | Will be called |
| 7 | Officer Terry Qualls | Fact | May be called |
| 8 | Rhonda Holley-West | Fact | May be called |
| 9 | Cathi Gumpert | Fact | May be called |
| 10 | Armontae Owens | Fact | May be called |
| 11 | Patricia Crawford | Fact | May be called |
| 12 | Heather Moody (McKinney Records Supervisor) | Fact | May be called |
| 13 | Officer David Rodriguez | Fact | May be called |

K. **DEFENDANT'S EXHIBIT LIST**

### DEFENDANT'S EXHIBIT LIST

| Exhibit No. | Document Description | Offered | Admitted | Rejected |
|---|---|---|---|---|
| D1 | 1994.07.08 Decree Terminating Parental Rights And Granting Adoption | | | |
| D2 | 2007.04.18 MR Administration Report Determination Of Mental Retardation | | | |
| D3 | 2017.02.06 Order Approving Guardian's Annual Report And Continuing Guardianship | | | |
| D4 | 2011.11.14 Order Appointing Permanent Guardian Of The Person | | | |
| D5 | 2011.11.14 Letters Of Guardianship | | | |
| D6 | 2017.02.17 Letters Of Guardianship | | | |
| D7 | 2014.07.27 McKinney PD Incident Investigation Report | | | |
| D8 | 2014.07.27 McKinney PD Suicidal Threats Report | | | |
| D9 | 2014.08.03 McKinney PD Incident Investigation Report | | | |
| D10 | 2014.08.03 McKinney PD Event Report | | | |
| D11 | 2014.09.08 McKinney PD Incident-Investigation Report | | | |
| D12 | 2014.09.08 McKinney PD Event Report | | | |
| D13 | 2014.10.07 McKinney PD Incident Investigation Report | | | |
| D14 | 2014.10.07 McKinney PD Event Report | | | |

| | | | | |
|---|---|---|---|---|
| **D15** | 2015.01.09 McKinney PD Event Report | | | |
| **D16** | 2015.01.11 McKinney PD Incident Investigation Report | | | |
| **D17** | 2015.01.11 McKinney PD Event Report | | | |
| **D18** | 2015.01.23 McKinney PD First Event Report | | | |
| **D19** | 2015.01.23 McKinney PD Second Event Report | | | |
| **D20** | 2015.03.13 McKinney PD Event Report | | | |
| **D21** | 2015.04.14 McKinney PD Event Report | | | |
| **D22** | 2015.04.22 McKinney PD Event Report | | | |
| **D23** | 2020.04.23 McKinney PD First Event Report | | | |
| **D24** | 2020.04.23 McKinney PD Second Event Report | | | |
| **D25** | 2020.04.23 McKinney PD Third Event Report | | | |
| **D26** | 2020.04.24 McKinney PD Fourth Event Report | | | |
| **D27** | 2020.04.24 McKinney PD Fifth Event Report mt | | | |
| **D28** | 2015.05.08 McKinney PD First Event Report | | | |
| **D29** | 2015.05.08 McKinney PD Second Event Report | | | |
| **D30** | 2015.05.08 McKinney PD Third Event Report | | | |
| **D31** | 2015.07.01 Green Oaks Prescription List | | | |
| **D32** | 2015.07.02 Medical City of McKinney Inpatient Psychiatric Transfer | | | |
| **D33** | 2015.07.08 Green Oaks Patient Discharge | | | |
| **D34** | 2015.07.08 Green Oaks Physicians Orders | | | |
| **D35** | 2015.07.08 McKinney PD Event Report | | | |
| **D36** | 2015.07.09 Green Oaks Emergency Patient Record | | | |

| | | | | |
|---|---|---|---|---|
| **D37** | 2015.07.09 Green Oaks Physician Order Moderate Severe Agitation | | | |
| **D38** | 2015.07.09 Green Oaks PES Medication Orders | | | |
| **D39** | 2015.07.09 Green Oaks Discharge Medications | | | |
| **D40** | 2015.07.09 Green Oaks Safety Search | | | |
| **D41** | 2015.07.09 Green Oaks Patient Visit Information Education Discharge Summary | | | |
| **D42** | 2015.07.09 Affidavit Of Records Custodian | | | |
| **D43** | 2015.07.10 McKinney PD First Event Report | | | |
| **D44** | 2015.07.10 McKinney PD Second Event Report | | | |
| **D45** | 2015.07.10 McKinney PD Third Event Report | | | |
| **D46** | 2015.07.10 Green Oaks Discharge Medication | | | |
| **D47** | 2015.07.10 Green Oaks Discharge Belongings Chain of Custody | | | |
| **D48** | 2015.07.10 Green Oaks Insurance Coverage | | | |
| **D49** | McKinney PD Internal Affairs Report 15-0027 | | | |
| **D50** | 2015.07.10 McKinney PD First Event Report | | | |
| **D51** | 2015.07.10 McKinney PD Second Event Report | | | |
| **D52** | 2015.07.11 McKinney PD Event Report | | | |
| **D53** | McKinney PD Incident Investigation Report | | | |
| **D54** | 2015.07.11 Green Oaks Emergency Patient Record | | | |
| **D55** | McKinney PD General Order 103.011 Crisis Intervention and Emergency Detention Orders | | | |

| | | | | |
|---|---|---|---|---|
| **D56** | McKinney PD General Orders 103.022 Preliminary Criminal Investigations | | | |
| **D57** | McKinney PD General Order 103.025 Use of Handcuffs | | | |
| **D58** | 2015.07.11 McKinney PD Event Report | | | |
| **D59** | 2015.07.11 McKinney PD Incident Investigation Report | | | |
| **D60** | 2015.07.11 McKinney PD Event Report | | | |
| **D61** | 2015.07.11 McKinney PD Event Report | | | |
| **D62** | 2015.07.11 McKinney PD Event Report | | | |
| **D63** | 2015.07.13 McKinney PD Notice of Formal Complaint | | | |
| **D64** | 2015.07.13 Green Oaks Discharge Papers | | | |
| **D65** | 2015.07.16 Randy Agan Email Re: Witnesses | | | |
| **D66** | 2015.07.16 Officer Hudgens Required Paperwork | | | |
| **D67** | 2015.07.16 Officer Palko Required Paperwork | | | |
| **D68** | 2015.07.16 Notice of Formal Complaint | | | |
| **D69** | 2015.07.18 McKinney PD First Event Report | | | |
| **D70** | 2015.07.18 McKinney PD Second Event Report | | | |
| **D71** | 2015.07.18 McKinney PD First Event Report | | | |
| **D72** | 2015.07.18 McKinney PD Second Event Report | | | |
| **D73** | 2015.07.18 McKinney PD Incident Investigation Report | | | |
| **D74** | 205.07.18 McKinney PD Emergency Detention Order | | | |

| | | | | |
|---|---|---|---|---|
| **D75** | McKinney PD Notification of Emergency Detention | | | |
| **D76** | 2015.07.19 McKinney PD Event Report | | | |
| **D77** | 2015.07.20 Laurie Christino, RN Statement | | | |
| **D78** | 2015.07.22 McKinney PD IA Charge Notification Garrity Warning | | | |
| **D79** | Potential General Orders Violated | | | |
| **D80** | 2015.07.29 McKinney PD Administrative Garrity Warning | | | |
| **D81** | 2015.07.29 McKinney PD IA Charge Notification | | | |
| **D82** | 2015.07.30 McKinney PD Incident Investigation Report | | | |
| **D83** | 2015.08.04 Affidavit for Search Warrant Relating to 07/11/2015 Event | | | |
| **D84** | 2015.08.04 McKinney PD First Event Report | | | |
| **D85** | 2015.08.04 McKinney PD Second Event Report | | | |
| **D86** | 2015.08.05 Green Oaks Letter to John Wall | | | |
| **D87** | 2015.08.24 McKinney PD Incident Investigation Report | | | |
| **D88** | 2015.08.28 Officer Palko Administrative Investigation | | | |
| **D90** | McKinney PD General Order 105.001 Personnel Complaints Investigations | | | |
| **D91** | 2015.08.28 McKinney PD Administrative Investigation | | | |
| **D92** | 2015.08.28 McKinney PD Attached Evidence | | | |

| | | | | |
|---|---|---|---|---|
| **D93** | 2015.08.28 McKinney PD Administrative Investigation Recommended Action Form | | | |
| **D94** | 2015.08.28 Office Palko Administrative Investigation Evaluations, Commendations, Discipline | | | |
| **D95** | 2015.09.01 Dupuis Anger Assessment | | | |
| **D96** | 2015.09.14 McKinney PD Event Report | | | |
| **D97** | 2015.09.14 McKinney PD Incident Investigation Report | | | |
| **D98** | 2015.09.22 McKinney PD Event Report | | | |
| **D99** | 20105.09.22 McKinney PD Incident Investigation Report | | | |
| **D100** | 2015.10.03 McKinney PD Event Report | | | |
| **D101** | 2015.10.16 McKinney PD Event Report | | | |
| **D102** | 2015.10.26 McKinney PD Event Report | | | |
| **D103** | 2015.10.26 McKinney PD Incident Investigation Report | | | |
| **D104** | 2015.10.27 Green Oaks Discharge Medication | | | |
| **D105** | 2015.11.02 McKinney PD Incident Investigation Report | | | |
| **D106** | 2015.12.11 McKinney PD Event Report | | | |
| **D107** | 2015.12.11 McKinney PD Incident Investigation Report | | | |
| **D108** | 2016.04.12 McKinney PD Event Report | | | |

| | | | | |
|---|---|---|---|---|
| **D109** | 2016.04.14 Notice of Hearing on Petitioner's Rule 202 Petition to Conduct Pursuit Deposition to Investigate Potential Claims | | | |
| **D110** | 2016.04.21 McKinney PD Event Report | | | |
| **D111** | 2016.04.29 McKinney PD Event Report | | | |
| **D112** | 2016.04.30 McKinney PD Event Report | | | |
| **D113** | 2016.05.04 McKinney PD Event Report | | | |
| **D114** | 2016.05.07 McKinney PD Event Report | | | |
| **D115** | 2016.05.14 McKinney PD Event Report | | | |
| **D116** | 2016.05.14 McKinney PD Incident Investigation Report | | | |
| **D117** | 2016.08.28 McKinney PD Event Report | | | |
| **D118** | 2016.09.06 McKinney PD Event Report | | | |
| **D119** | 2016.09.06 McKinney PD Event Report | | | |
| **D120** | 2016.10.19 McKinney PD Event Report | | | |
| **D121** | 2016.10.23 McKinney PD Event Report | | | |
| **D122** | 2016.11.21 McKinney PD Event Report | | | |
| **D123** | 2015.07.11 Medical City ER Emergency Provider Report | | | |
| **D124** | 2015.08.02 McKinney Meta Data | | | |
| **D125** | 2015.07.11 Green Oaks Hospital Emergency Patient Record | | | |
| **D126** | 2015.07.12 Green Oaks Hospital Emergency Patient Record | | | |
| **D127** | 2015.08.24 Green Oaks Hospital Discharge Papers | | | |

| | | | | |
|---|---|---|---|---|
| **D128** | 2015.09.03 Medical City Hospital Discharge Papers | | | |
| **D129** | 2015.09.07 Green Oaks Hospital Emergency Patient Record | | | |
| **D130** | 2015.09.08 Cathi Gumpert Letter Regarding Possible Detox | | | |
| **D131** | 2015.08.28 Officer Hudgens Administrative Investigation General Orders | | | |
| **D132** | 2015.08.28 Officer Palko Administrative Investigation General Orders | | | |
| **D133** | City of McKinney Organizational Chart | | | |
| **D134** | McKinney PD Organizational Chart | | | |
| **D135** | City of McKinney Charter Section 63 – Chief of Police | | | |
| **D136** | City of McKinney Charter Chapter 4 – City Manager | | | |
| **D137** | City of McKinney Charter Section 19 Powers of the City Council | | | |
| **D138** | Surveillance Footage from Inside the Green Oaks Waiting Room. Dupuis 000865. | | | |
| **D139** | Surveillance Footage from Inside the Green Oaks Triage Room. Angle 1. Dupuis 000866. | | | |
| **D140** | Surveillance Footage from Inside the Green Oaks Triage Room. Angle 1. Dupuis 000867. | | | |
| **D141** | Officer Keith Hudgens Squad Car Recording. | | | |
| **D142** | Green Oaks Surveillance Footage with Officer Hudgens Squad Car Recording | | | |

| D143 | Keith Hudgens Dashcam Video Arriving at Group Home. | | | |
|------|------|------|------|------|

## K.  NOTICE OF VIDEO DEPOSITION DESIGNATION

In rebuttal and pursuant to optional completeness, McKinney designates the video depositions of Plaintiff Rich, Officer Erik Johnson, Chief Greg Conley, Rhonda Holley-West, and Chief Randy Agan.  The above listed video depositions are listed for the purpose of Federal Rule of Evidence 106, optional completeness. By designating the above witnesses, McKinney reserves the right to call any and all of the above witnesses at trial and does not waive said right. McKinney does not stipulate to the admissibility of any testimony by inclusion.[6]

L.       In the event Holley-West is not able to testify in person, McKinney designates the following deposition testimony:

| Defendant's Designations | |
|--------------------------|--|
| 6:13-19 | |
| 10:15-24 | |
| 11:3-6 | |
| 12:3-13:17 | |
| 15:16-21 | |
| 15:23-16:7 | |
| 16:21-24 | |
| 17:2-10 | |
| 18:4-7 | |
| 18:8-11 | |

---

[6] Plaintiff states the Defendants designations are not timely or adequate.

| | |
|---|---|
| 18:14-20 | |
| 19:1-4 | |
| 19:10-13 | |
| 19:19-20:5 | |
| 20:21-25 | |
| 21:6-20 | |
| 22:1-5 | |
| 22:18-24:4 | |
| 24:10-12 | |
| 24:15-19 | |
| 24:22-25:4 | |
| 25:8-24 | |
| 26:16-18 | |
| 29:9-18 | |
| 31:6-10 | |
| 32:24-33:6 | |
| 33:13-16 | |
| 35:4-13 | |
| 35:23-36:4 | |
| 36:8-15 | |
| 37:6-7 | |
| 37:23-38:4 | |
| 42:4-11 | |

| | |
|---|---|
| 43:12-15 | |
| 44:3-7 | |
| 45:3-6 | |
| 46:2-16 | |
| 47:4-17 | |
| 47:24-48:6 | |
| 48:11-17 | |
| 48:21-24 | |
| 49:7-13 | |
| 50:9-19 | |
| 51:8-23 | |
| 52:21-53:21 | |
| 54:3-12 | |
| 55:9-19 | |
| 55:24-25 | |
| 57:22-25 | |
| 58:7-20 | |
| 59:4-9 | |
| 60:15-23 | |
| 63:13-16 | |
| 64:10-12 | |
| 65:14-66:9 | |

**IT IS SO ORDERED.**

**SIGNED this 11th day of June, 2020.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE